# MOORE *v.* MOORE. (2)

---

### EXECUTORS AND ADMINISTRATORS; PAYMENT OF LEGACIES.

1. The measure of the responsibility of executors in the administration of the estate of their testator is the care, skill, and diligence of reasonably prudent men in the management of their own affairs.

2. Where one of two innocent persons must suffer a loss caused by the
   fraudulent act of another, the one must bear the loss whose act
   was the cause of it.    (Following *Central Nat. Bank* v. *National
   Metropolitan Bank*, 31 App. D. C. 391.)

3. A distributive share of an estate is payable in cash, and where ex-
   ecutors, with no express or implied authority from a nonresident dis-
   tributee to do so, and not being led to do so by any act of his, send
   him the amount of his share by their check, which is received and
   cashed by a stranger, by means of forgery, there has been no pay-
   ment to the distributee; and the probate court on petition of the dis-
   tributee properly orders the executors to make payment to him.
   (Citing sec. 394, D. C. Code [31 Stat. at L. 1251, chap. 854], provid-
   ing that "any administrator shall be entitled to appoint a meeting
   of persons entitled to distributive shares or legacies or a residue, on
   some day by the court approved, and payment or distribution may
   be there made under the court's direction and control.")

No. 3100.   Submitted October 3, 1917.   Decided November 12, 1917.

HEARING on an appeal from an order of the Supreme Court
of the District of Columbia, sitting as a probate court, requiring
executors to pay a legatee his distributive share of the estate.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order in the probate branch of the
supreme court directing appellants, J. Gales Moore and Edward
E. Clement, who are the executors under the will of Daniel
McFarlan, to pay forthwith to the appellee, John R. Moore, the
distributive share of $11,947.54, with interest, to which he is
entitled under said will, the contention of appellants being that,
having in good faith and without negligence inclosed a check
for such distributive share in a letter addressed to appellee at
Los Angeles, California, although not authorized by him so to
do, they should not be compelled to make payment under this
order, notwithstanding that the check so sent was received,
cashed, and misappropriated by a stranger.

The cause was heard upon appellee's petition and the answer
of appellants; and the facts, which are undisputed, are sub-
stantially as follows:   John R. Moore, the appellee, as the only

descendant of John F. Moore, a brother of the testator's wife, is entitled under the will of said Daniel McFarlan to a one-fourteenth share of the residuary estate, which share, as ascertained by the final account of the executors filed April 4, 1916, amounted to $11,947.54.

Daniel McFarlan died February 6, 1915. The appellants, J. Gales Moore, an uncle of the appellee, and an equal beneficiary under the will, and Edward E. Clement, were named as executors. On February 15th Mr. Clement, on behalf of his co-executor and himself, sent a letter to the last known address of appellee, No. 1128 West 25th street, Los Angeles, California, informing him of the disposition that the testator had made of his estate. This letter reached appellee; for, under date of February 24th, he acknowledged its receipt in a letter to appellant J. Gales Moore. Under the signature on appellee's letter appeared, "#1416 Valencia St., Los Angeles, Cala.," but whether this was a residence or office address does not appear. Nor does it appear that further correspondence between the parties was attempted for more than a year or until April, 1916, when it became necessary to obtain from appellee his consent to the allowance of fees and commissions claimed under appellants' account, whereupon, in conformity with probate rule 16 of the supreme court, appellants forwarded a form of such consent and notice by registered mail to John R. Moore, No. 1128 West 25th street, Los Angeles, California. This communication was received, receipted for, and the inclosed consent returned by some-one other than the appellee, although appellee's name was used by the imposter. How the forged signature compared with the genuine does not appear.

On May 5, 1916, Mr. Clement, acting for both executors, again addressed "John R. Moore, 1128 West 25th street, Los Angeles, Cala.," and inclosed a résumé of the executors' account and a form of affidavit to be executed by the appellee, in order that his identity might be made to appear to the probate court here, the court having called for proof of the lines of descent before finally approving the executors' account. This form of affidavit set forth the facts which appellants deemed necessary to establish the identity of the person who should execute it.

This communication, as was the previous one, was received by the imposter, who executed the inclosed affidavit and sent it to Mr. Clement, together with a letter in which he noted that he had looked over the distribution sheets, and that the names and amounts seemed to be correct, and further advised Mr. Clement that "my new address is 1100 East 12th St."

Thereafter the executors received from the imposter a receipt which, unwittingly, they had sent him for appellee's distributive share in the estate, and thereupon, on May 23, 1916, they sent a check drawn on a local bank to the order of John R. Moore for the amount of his distributive share to the address given by the imposter; that is, to 1100 East 12th street, Los Angeles, California. Indorsed upon this check was a description of the legatees and dstributees, in which John R. Moore was described as the descendant of John F. Moore, deceased. This check was received, cashed, and the funds converted by the imposter.

In November of 1916, following, appellee notified appellants that he had not received his distributive share of the estate, whereupon they took steps looking to the recovery of the amount. Thereafter, upon the failure of appellants to respond to his demand, appellee filed his petition in the probate court, setting forth the facts and praying for a rule to show cause why such share should not be paid to him forthwith.

*Mr. J. J. Darlington* and *Mr. Frank J. Hogan,* for the appellant, in their brief cited:

*Alwood's Estate,* 2 App. D. C. 76; *Carpenter* v. *Carpenter,* 12 R. I. 544; *Colburn* v. *Grant,* 181 U. S. 606: *Corrington* v. *Corrington,* 15 Ill. App. 393; *Dundas* v. *Chrisman,* 25 Neb. 495; *Foster* v. *Goddard,* 1 Bl. 518; *Glasgow* v. *Lipse,* 117 U. S. 327, 333, 334; *Judge* v. *Durn,* 51 Mo. 267; *Kee* v. *Kee,* 2 Gratt. 116; *Kennaday* v. *Sinnott,* 179 U. S. 613–615; *Mikell* v. *Mikell,* 5 Rich. Eq. 220; *Stafford* v. *McIntosh,* 39 La. Ann. 836; *State* v. *Meagher,* 44 Mo. 356; *Voorhees* v. *Stoothof,* 11 N. J. L. 171; *Westervelt* v. *Ackerson,* 35 N. J. Eq. 43; Williams, Exrs. 322; 11 R. C. L. Exrs. & Admrs. secs. 140 and 159; 18 Cyc. 233, 423.

*Mr. Clarence R. Wilson* and *Mr. Paul E. Lesh,* for the appellee, in their brief cited:

*Adair* v. *Brimmer,* 74 N. Y. 539; *Central Bank* v. *National Metropolitan Bank,* 31 App. D. C. 391; *Falls Bridge Turnp.* v. *Adams.* 1 Hayw. & H. 95; *Hoge* v. *First Nat. Bank,* 18 App. D. C. 501; *Re Bear,* 9 Pa. Super. Ct. 492; *Re Atwood,* 2 App. D. C. 74; *Re Robertson,* 51 N. Y. App. Div. 117, 64 N. Y. Supp. 385; *State ex rel. Crider* v. *Wager,* 47 Mo. App. 431; *Villard* v. *Villard,* 219 N. Y. 582.

Mr. Justice Robb delivered the opinion of the Court:

There is no question that, as appellants contend, the measure of their responsibility as executors in the administration of the estate is the care, skill, and diligence of reasonably prudent men in the management of their own affairs. *Glasgow* v. *Lipse,* 117 U. S. 327, 29 L. ed. 901, 6 Sup. Ct. Rep. 757; 11 R. C. L. Exrs. & Admrs. sec. 140. But the statement of this abstract rule of law does not aid in the solution of the question in this case, for the reason that the failure of this legatee to receive his distributive share of the estate may not be attributed to the acts of these executors in the management of the estate, but rather is the result of their departure from settled practice in the attempted payment of that distributive share, the amount of which had been finally determined and was in their hands as executors for final distribution. Their management of the estate is not here in question. The issue is much narrower. They filed their final account, showing the payment to this legatee of the amount of his distributive share. It developed that he had not received the amount to which he was entitled. The law imposed upon these executors the duty of making that payment; and if there has been a departure by them from established and settled practice in attempting to fulfil their duty in that regard, and, as the result of that departure, this legatee has failed to receive that which was his due, it necessarily must follow that, as between these parties, the executors must bear the loss, since as

between two innocent persons he whose act was the cause of the loss must bear it. *Central Nat. Bank* v. *National Metropolitan Bank,* 31 App. D. C. 391, 17 L.R.A.(N.S.) 520.

It results from what we have said that the question whether these executors finally succeed in recovering the amount here involved from other parties is immaterial to this issue. If the failure of this distributee to receive his share of the estate is attributable primarily to any act of the executors, he may look to them alone. The success or failure of appellants, therefore, in their litigation with third parties, is immaterial here.

Section 394 of our Code [31 Stat. at L. 1251, chap. 854], entitled "Meeting of Legatees or Next of Kin," provides that "any administrator shall be entitled to appoint a meeting of persons entitled to distributive shares or legacies or a residue, on some day by the court approved, and payment or distribution may be there made under the court's direction and control." This provision merely gives expression to the well-settled rule that a legacy is payable in cash, unless some other form of payment is authorized by the person entitled. In the present case the distributee was a nonresident, and the executors, waiving their right to make payment here under the direction of the court, assumed the risk of sending the money by check to California. To absolve themselves from responsibility to the distributee it must appear that he expressly or impliedly authorized them so to act, and, unless he did, in contemplation of law the money still is in their hands and they must respond to the order of the court.

In *Rainwater* v. *Hummell,* 79 Iowa, 571, 44 N. W. 814, which was an action against an administrator and sureties to recover the balance of the distributive share of an heir of the testator, the administrator had tendered the amount which the probate court had ruled was the distributive share of the heir, and, the tender being refused, the administrator had deposited the money to the credit of the heir in a bank which subsequently failed. The action was brought under a statute authorizing the court, on ten days' notice, to enter summary judgment "if the executors fail to make payment of any kind in accordance with the order of the court." The court said: "Counsel for defend-

ant insist that the case does not fall under this statute, for the reason that defendant did not fail to make the payment; that he did make a tender of the sum due plaintiff, who failed to receive his money because he failed to accept the tender. But the defendant, by failing to keep the tender good by bringing the money into court to be disposed of as the court should direct, or by failing to pay the money when demanded, lost the benefit of the tender, which had no other effect than to afford evidence establishing defendant's indebtedness by reason of his default." There, as here, there had been a departure from settled practice, and, irrespective of the question of negligence, the loss was placed upon the administrator.

In the case of the *State ex rel. Crider* v. *Wagers,* 47 Mo. App. 431, the probate court had ordered an executor to pay a certain sum to a nonresident. After obtaining a receipt from the distributee the executor bought a draft from a reputable bank and sent it to the distributee, who in due course attempted to have the same collected, but whose efforts were abortive because of the failure of the bank. The court, after stating that the general rule as to the responsibility of executors and administrators was inapplicable, said: "Mrs. Crider was a nonresident of the State, and the executor was not bound to hunt her up and send her the money ordered to be paid her. He could have obtained an order of the court to loan out the same (Rev. Stat. sec. 252), which would have been sufficient excuse for withholding payment. But he elected to send her the money by draft, in which he was unsuccessful. If he had owed Mrs. Crider the amount of money due her, for the purchase money of property sold to him by her or for money loaned, would the sending of a draft, in the absence of a request to so send it, or an express agreement to receive the draft as payment, discharge the debt? * * *

"The case must stand just as if the executor had never sent the draft at all. There has been no payment, nor are any facts shown in the pleadings or evidence which exonerate the executor."

In the present case, the executors admittedly received no authorization from this distributee to send his share to him by

check.    That they had at least implied authority from the imposter is beside the question, unless it should appear that they were misled through some act of the real party in interest, and it is not seriously contended that the facts warrant such a finding.    It was not incumbent upon him to watch proceedings here, and, his uncle being one of the executors, it was most natural that he should have permitted matters to take their course without suggestion or interference from him.

Failing to show any authorization from this distributee for the sending of his share to him by check, and the sending constituting, as it did, a departure from settled practice, and resulting in the loss of that distributive share, it must be held that, as between these parties, irrespective of the question of negligence, there has been no payment, and that the decree in the lower court was right.    That decree, therefore, is affirmed, with costs.                                                    *Affirmed.*