**McClure GODETTE, Appellant,**

v.

**ESTATE OF Mildred COX, Appellee.**

No. 90–722.

District of Columbia Court of Appeals.

Argued April 9, 1991.
Decided June 11, 1991.

7. The officers were in street clothes, but wore jackets with "Police" embossed on both front and back.

Brian Geno, Washington, D.C., for appellant.

Marsha E. Swiss, Washington, D.C., for appellee.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

FERREN, Associate Judge:

Appellant, the former personal representative of the estate of Mildred Cox, appeals from a judgment entered against him for $56,279.64 in disallowed expenditures of estate funds, including $24,440 in administrative fees taken without prior court authorization. Appellant maintains that the disallowance is (1) contrary to the evidence submitted in the case and (2) contrary to the intent of the testator, whose will expressly immunized appellant from liability "except in case of willful default or bad faith." Finding no merit to appellant's contentions, we affirm.

## I.

When Mildred Cox, a childless widow incapacitated for many years by arthritis and Parkinson's disease, died on January 15, 1985, she left an estate valued at close to $240,000, including a home assessed at $65,000. Her will nominated McClure Godette, a neighbor and self-employed home contractor, as her personal representative. She gave most of her estate—the residuary estate—to three charities: the Arthritis Foundation, the Columbia Lighthouse for the Blind, and the Society for the Prevention of Cruelty to Animals. About two weeks after Mildred Cox's death, Godette filed a petition for probate. See D.C.Code § 20–304 (1989). Within days, the court approved his appointment, see id. § 20–303, and the decedent's will was admitted to probate.[1] Fifteen months later, in May 1986, Godette filed his initial accounting, see id. § 20–722; Super.Ct.Prob.R. 114, followed by an amended accounting that valued the estate at $238,476.10.

---

1. For appointment as personal representative, Godette was required to file a statement accepting the duties of his office. See D.C.Code § 20–501(a) (1989). Among these duties, the personal representative is required to inventory the estate, see id. § 20–711, and to provide regular accountings to the court by "prepar[ing] verified written accounts of the management and distribution of the decedent's property at all times...." Id. § 20–721. These accountings must include "all receipts of the estate since the date of the previous account[.]" Id. § 20–723(c).

On October 4, 1986, without filing a request for compensation or obtaining court approval as required by D.C.Code § 20–751 (1989), *see* Super.Ct.Prob.R. 124, Godette withdrew $23,659 in several checks from the estate bank account as payment for his services in administering the estate. Not until March 1987 did Godette file a request for compensation with the court, seeking $26,990.[2] In June 1987, the residuary charitable beneficiaries objected that Godette's fees were excessive considering the size of the estate and that certain other expenditures were questionable.

After a hearing, the court referred the objections to an Auditor–Master, who conducted his own evidentiary hearings and issued a report on December 2, 1987. That report concluded that Godette should reimburse the estate $91,111.76 in disallowed expenses that included: $9,000 for payments to Godette's contracting firm in the amounts of $7,000[3] and $2,000 (disallowed as unsupported by adequate documentation); $10,000 paid to Godette's wife for nursing assistance (disallowed as unsupported by documentation and contrary to the testimony of two witnesses); $62,-709.16 in miscellaneous expenses (disallowed as lacking in adequate supporting documentation, as excessive, and as "made in total disregard of the interest of the beneficiaries of the estate"); and the entire $26,990[4] in fees Godette had paid himself as personal representative (disallowed with reference to 31 Am.Jur.2d *Executors and Administrator* § 953 (1989): "An executor or administrator who has been guilty of fraud, dishonesty, bad faith, gross neglect, gross negligence, or willful default may be denied compensation").

The Auditor recounted the testimony of appellant's own attorney, who, according to the Auditor,

feels the personal representative and the claimants took advantage of decedent and that [the attorney] went through matters with the personal representative that seemed irregular to him; ... he tried to convey to the personal representative the need to conserve and protect the estate.... He further discussed the inordinate amount of disbursements with the Personal Representative.

The Auditor–Master also found that, "[u]pon his appointment as Personal Representative, McClure Godette apparently commenced to expend exceedingly large sums for maintenance, repairs and upkeep of decedent's real estate." The Auditor–Master recommended removal of Godette as personal representative and concluded:

It is obvious to the Auditor–Master that McClure Godette, Personal Representative has completely mismanaged this estate. Commencing with an estate of $238,476.10, and after collecting additional interest of $692.18 and rentals of $1,025.00 for a total estate of $241,193.28 through August 18, 1987, there is now an estate of $76,163.81. Excluding distribution of legacies totalling $19,547.00, he has expended a total of $145,482.37 for maintenance of real estate, payment of claims, administration costs and debts. Expenditures thus far total an unbelievable 63% of the value of decedent's real estate.[ ] The sale of the property has still not been consummated although the Personal Representative was appointed on February 1, 1985—two years and nine months ago. All of the costs of repairing and maintaining decedent's real es-

2. This amount included the $23,659 taken in October 1986, plus some other unauthorized payments Godette made to himself.

3. The Report's description of this $7,000 payment strongly suggested fraudulent dealings:

In making payment of this claim, Mr. Godette sent the $7,000 payment to one Tariq Rai, who works as an employee of Mr. Godette. The $7,000 payment was not paid to ... Mr. Rai. It purchased a money order and then the cash went into the bank account of E & M, the incorporated firm of which Mr. Go-

dette and his wife are the only principals and not to Mr. Rai to whom the covering letter was addressed.

4. The Auditor–Master's Report noted that the $26,990 included a $2,550 management fee which Godette had paid to his own contracting firm (disallowed as improper self-dealing with a quotation from *Magruder v. Drury*, 235 U.S. 106, 109, 35 S.Ct. 77, 78, 59 L.Ed. 151 (1914) ("A trustee can make no profit out of his trust....")).

tate could have been avoided by the more expeditious sale of the real estate with a contract providing an "as is" condition. Further, he lowered the sales price on [decedent's home] without being requested to do so by the buyer.

Appellant filed objections to the report two weeks later.

In September 1988, the court issued an order adopting the report in part[5] but remanding the rest for the Auditor–Master to consider additional receipts and vouchers appellant claimed would verify that $62,709.19 in disallowed expenditures had been made for the benefit of the estate and were not time-barred under D.C.Code §§ 20–902, –903. Meanwhile, after a hearing in October 1988, the court removed Godette as personal representative and appointed a successor.

In November 1988, the Auditor–Master issued a second report. He allowed $264.52 (two phone bills and a gas bill) but continued to disallow $76,282.24, including $24,440 Godette had taken in fiduciary fees. The Auditor–Master found that most of the vouchers Godette had submitted were for merchandise delivered to his home address or to his management company, "which manages several pieces of real estate in the same block as decedent's real estate." "Many of these checks written and vouchers submitted do not reflect [that] the various amounts paid for repairs and services were made for the benefit of the decedent's estate. Many of these expenditures appear to be quite excessive and far exceed a reasonable amount for the particular service and repairs rendered and [were] made in total disregard of the inter-

est of the beneficiaries of the estate." Godette again objected to the report.

After a hearing on January 19, 1989, the trial court issued an order on April 16, 1990, approving the second report. The Court found, after an independent review of the documentary evidence, that "[r]eceipts and vouchers were not submitted from which it could be shown that any of the claim[s] [were] ... a legitimate charge against the estate." The court also found that Godette had failed to submit an itemized statement of his services rendered and time spent as personal representative; thus, the Court could not consider his request for compensation "in light of the statutory criteria." The court entered judgment against Godette personally for $148,946.05.[6]

## II.

### A.

■ Appellant objects to the disallowance of $31,839.64 as improper payments, arguing the Auditor–Master was incorrect in finding that appellant had not supplied adequate proof of the validity of these cash expenditures. He argues that the receipts, vouchers, and cancelled checks delivered to the Auditor–Master, together with his own testimony and that of his workers, were sufficient to show that he had made these payments in the best interests of the estate and in accord with the decedent's wishes. Furthermore, he argues, he is an inexperienced fiduciary who acted in good faith, on advice of counsel, and not for personal gain.

---

5. The Court upheld the disallowance of a $10,000 payment to appellant's wife not only because witnesses testified that Mrs. Godette did not provide nursing services to the decedent, but also because Mrs. Godette's own affidavit denied providing these services. "[H]er claimed services were the usual acts of kindness provided to a friend for which no compensation was sought and for which none was provided." Wagner, J., Order Sustaining in Part and Overruling in Part Objections to the Report of the Auditor–Master and Referring Certain Matters to the Auditor–Master for Further Action (Sept. 2, 1988). The court also upheld the disallowance of a $2,550 management fee to Godette's own company because it was tainted with self-

dealing. Godette does not contest the disallowance of this $2,550, which, when subtracted from the $26,990 in total administration fees Godette paid himself, yields the $24,440 in administrative fees in dispute.

6. The judgment included the $65,000 value of the decedent's real estate, almost $11,000 in cash on deposit in decedent's bank account, and close to $13,000 appellant claimed he had reimbursed to the estate. Appellant does not dispute these three items. Of the approximately $60,000 remaining in the judgment, appellant contests $56,279.64.

■ Our review of this issue of fact is quite narrow. In nonjury trials, the trial court is required to accept the Auditor–Master's findings of fact unless they are clearly erroneous. *See* Super.Ct.Civ.R. 53(e)(2); *House of Wines, Inc. v. Sumter,* 510 A.2d 492, 497 n. 10 (D.C.1986). On appeal, we are "guided by the same standard." *Rosendorf v. Toomey,* 349 A.2d 694, 699 (D.C.1975). *See David v. Bryant,* 117 U.S.App.D.C. 266, 267, 328 F.2d 567, 568 (1964) (quoting *Dyker Bldg. Co. v. United States,* 86 U.S.App.D.C. 297, 299, 182 F.2d 85, 87 (1950)) (appellate court "may not properly set aside a judgment which rests upon findings of fact made by a special master and adopted by the trial court unless at least such findings are clearly erroneous").[7]

While the District of Columbia Code empowers a personal representative to make all payments necessary to the maintenance and administration of an estate, *see* D.C. Code § 20–741 (listing "general powers" of personal representative); *Johnson v. Martin,* 567 A.2d 1299, 1303 (D.C.1989), the Code and the Probate Rules also impose corresponding duties on the personal representative to keep "all receipts of the estate," D.C.Code §§ 20–722(c), –723(c), and to "[e]xhibit all checking account bank statements and cancelled checks or vouchers evidencing cash transactions during the accounting period." Super.Ct.Prob.R. 118(a)(1). These rules are necessary for the protection of all interested parties and are not so onerous that a lay person, following reasonably prudent financial practices, could not comply. The Auditor–Master and the trial court found that appellant did not follow these rules and, instead, presented cancelled checks and receipts that either had no relationship to each other or had no relationship to the estate.[8] Nothing in the record leads us to conclude that the Auditor–Master, or the trial court

on review, erred in concluding that appellant did not adequately comply with the Code and the Probate Rule requirements for documenting his cash expenditures.

**B.**

■ Appellant also claims the trial court erred in refusing to authorize $24,440 in administrative fees that appellant had paid to himself out of estate funds. "A request for compensation for work performed with respect to the administration of an estate must be accompanied by documentation showing a reasonable relationship between the requested fees and the nature of the services performed, the reasonableness of the time spent, the applicant's usual hourly compensation, and the results achieved." *Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989); D.C.Code § 20–751(c) (1981); Super.Ct.Prob.R. 124. "A trial court must consider these statutory factors when determining the amount of compensation, if any, to be awarded." *Williams,* 563 A.2d at 1080; *Poe v. Noble,* 525 A.2d 190, 196 (D.C.1987). Moreover, a personal representative has no right to take fees from the estate before court authorization. *See* D.C.Code § 20–751(a); *Henry v. Grimes,* 118 U.S.App.D.C. 160, 161, 334 F.2d 550, 551 (1964) ("Nor may [the executor] disburse payment to himself for his own claims against the decedent before those claims are presented to the probate court, where they will 'be critically examined and will not be allowed unless the court is satisfied they are just.'" (citations omitted)); 34 C.J.S. *Executors and Administrators* § 856 (1942). A trial court's decision to deny compensation, if based upon application of the statutory factors specified in D.C.Code § 20–751(c), is an exercise of discretion that we will not disturb absent abuse. *See Williams,* 563

---

7. We do not have to consider our standard of review when a trial court rejects the Auditor–Master's findings.

8. At one hearing, appellant claimed all his receipts had been stolen from his car. At another hearing, appellant at first claimed he had given all the vouchers to the Auditor–Master but then claimed he had given them to the successor

personal representative. Despite repeated requests, appellant never produced cancelled checks but only copies of the fronts of checks. In the end, the Auditor–Master and trial court, having exercised much patience and having made their requests clear, concluded that the receipts and cancelled checks were inadequate.

A.2d at 1080; 31 AM.JUR.2D *Executors and Administrators* § 952 (1989). In this case, the trial court found that appellant had failed to file the documentation the court needed in order to apply the statutory factors. No record evidence has been cited on appeal that would cause us to question this finding.

### III.

Finally, appellant argues that two provisions of decedent's will should be read to relieve him of any liability.

### A.

■ Appellant contends the will granted plenary powers that made him unaccountable to the court. The will stated that the personal representative:

> shall have full discretionary power without order or approval of any court, to take action desirable for the complete administration of my estate, including the power to sell any real or personal property belonging to my estate at whatever prices and upon whatever terms my executor or executrix deem advisable ...

We have previously held, however, that the District of Columbia Probate Reform Act of 1980, D.C.Code § 20–101 *et seq.* (1989), "abolish[ed] the common law doctrine allowing non-judicial disposition of a decedent's estate." *Richardson v. Green,* 528

A.2d 429, 431 (D.C.1987).[9] We reasoned that because the Code requires judicial appointment of a personal representative as a prerequisite to probate and subjects that representative to the court's authority, the possibility of a non-judicial distribution of estate property is precluded by law. In short, a provision of a will that conflicts with the Probate Code is invalid. *See id.* Appellant's argument that decedent's will made him altogether unaccountable to the court must fail.

### B.

■ Appellant argues, next, that an exculpatory clause in the decedent's will protects him against all liability unless the court finds he acted in "willful default or bad faith." The clause provides:

> No executor acting under this will shall be liable for any loss or damage which may result to my estate by reason of the exercise of any discretionary power conferred upon such executor, except in case of willful default or bad faith.

Because neither the Auditor–Master nor the court made a finding of willful default or bad faith,[10] appellant argues he cannot be held liable for improper payments.

■ The courts generally enforce an exculpatory or immunity clause that relieves a personal representative from personal liability for losses resulting from failure to meet a required standard of care,[11] unless

---

**9.** D.C.Code § 20–357 (1989) provides an exception allowing for nonjudicial disposition "[i]f the only property of a decedent is not more than 2 motor vehicles." *See Richardson,* 528 A.2d at 430.

**10.** While the Auditor–Master did not make an express finding of "bad faith or willful default," he found that appellant had "completely mismanaged the estate" by making excessive and undocumented expenditures. He disallowed payments appellant had made to his wife and to his company as improper self-dealing, see *supra* note 4, described one payment appellant had made to his company in terms suggesting fraudulent dealing, see *supra* note 3, and recounted the testimony of appellant's trial attorney who had cautioned appellant about irregular dealings. The trial court concurred in these findings and rulings.

**11.** Exculpatory clauses are different from provisions in a will that enlarge upon the general

powers of a personal representative, such as the powers specified in D.C.Code § 20–741. For example, a testator may wish to authorize a personal representative or a testamentary trustee to invest in securities that might be too risky to qualify under the "prudent person" rule. *See* D.C.Code § 20–701(a) (1989). Such a clause would enlarge the powers of the personal representative beyond those specified by statute and thereby prevent the exercise of such powers from resulting in a breach of fiduciary duty. In contrast, an exculpatory clause relieves a personal representative from personal liability for breaches of duty, however narrowly or broadly defined. *See* 3 A. SCOTT & W. FRATCHER, THE LAW OF TRUSTS § 222.1 (4th ed. 1988). It is therefore possible for a testator to relax the prudent person standard while the legislature forbids exculpatory clauses that too liberally excuse failure to conform even to the broader standard prescribed. *See* CAL.PROB.CODE §§ 16040, 16461 (West 1991) (testator may expand or restrict

the clause is contrary to statute or public policy. *See* G. BOGERT & G.T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 542 (Rev.2d ed. 1978 & 1991 Supp.); 3 A. SCOTT & W. FRATCHER, THE LAW OF TRUSTS § 222 (4th ed. 1988); RESTATEMENT (SECOND) OF TRUSTS § 222 (1959); Annotation, *Provisions of Will or Other Trust Instrument Exempting Trustee From or Limiting His Liability*, 83 A.L.R. 616 (1933). An exculpatory clause that excuses self-dealing or attempts to limit liability for breaches of duty committed in bad faith, intentionally, or with reckless indifference to the interest of the beneficiary, is generally considered to be against public policy. *See* RESTATEMENT (SECOND) OF TRUSTS at § 222(2).

Several states address this issue by statute, authorizing the testator, the beneficiaries, or the court to relieve the personal representative (or trustee) from liability for breaches of the required duty of care. *See, e.g.,* MO.ANN.STAT. § 456.570 (Vernon 1991 Supp.) (court for cause shown may relieve trustee from any restriction on trustee's power imposed by trust or statute); OKLA. STAT.ANN. tit. 60, § 175.22 (West 1971) (beneficiary may relieve trustee of duties and liabilities imposed by statute); TEX.PROP. CODE ANN. § 113.059 (Vernon 1984) (settlor may relieve trustee from duty or liability imposed by statute); *Corpus Christi Nat'l Bank v. Gerdes*, 551 S.W.2d 521 (Tex.Ct. App.1977) (because of express statutory authorization, will may relieve corporate executor of all duties, restrictions, and liabilities); WASH.REV.CODE ANN. § 11.97.010 (1987) (trustor may relieve trustee from any duty or liability imposed by statute, except duty to act in good faith and with honest judgment). Other states, however, expressly limit or prohibit such exoneration. *See, e.g.,* CAL.PROB.CODE §§ 16040, 16461 (West 1991), *supra* note 11; N.Y. EST. POWERS & TRUSTS LAW § 11.1–7(a)(1) (Consol.1967) (any exoneration of testamentary trustee from liability for failure to

exercise reasonable care, diligence, and prudence is contrary to public policy).

The District of Columbia does not have a statute dealing with exculpatory clauses in wills or trusts. We begin by noting that D.C.Code § 20–701(a) adopts the "prudent person" standard of care for all personal representatives. It provides in relevant part:

> [a] personal representative is a fiduciary who ... is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will or laws relating to intestacy and this title as would a prudent person in such matters. Such representative shall use the authority conferred by this title by the terms of the will, if any, ... and by equitable principle generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors.

The legislative history of § 20–701 further defines the standard:

> [S]ection 20–701 places a general duty upon every personal representative to exercise the discretion and intelligence of a 'prudent person' in the settling of estate affairs and the distribution of estate assets—fairly considering the interests of all interested persons and creditors. *See Moore v. Moore*, [47 App.D.C. 23, 27 (1917)]. The 'prudent person' standard would apply *invariably* whether the personal representative was acting generally under the provisions of [the Code] or in accordance with the terms of a will.

COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, BILL NO. 3–91, at 46 (Mar. 12, 1980) (COMMITTEE REPORT) (emphasis added). The Probate Reform Act accordingly codified the traditional rule of this jurisdiction: a fiduciary is required to exercise the "care, skill, and diligence of reasonably prudent [per-

"prudent person" standard but may not relieve trustee from breach of trust committed intentionally, with gross negligence, in bad faith, or with reckless indifference to interest of beneficiary); *Bartlett v. Dumaine*, 128 N.H. 497, 523 A.2d 1, 8–9 (1986) (by allowing trustee to exercise "discretion" in making investments, settlor

lessens trustee's statutory duty to act as a "prudent person seeking to conserve the property"); *Hoffman v. First Virginia Bank*, 220 Va. 834, 839, 263 S.E.2d 402, 406 (1980) (unless trust provides otherwise, prudent person rule will be applied to asset management).

sons] in the management of their own affairs." *Moore v. Moore,* 47 App.D.C. at 27, *cited in* COMMITTEE REPORT at 46.

Under D.C.Code § 20–743, a personal representative may be held personally liable for damages resulting from each breach of fiduciary duty:

> If any personal representative's exercise of power concerning the estate is improper, such representative is liable for breach of fiduciary duty to interested persons for resulting damage or loss to the same extent as a trustee of an express trust.

The COMMITTEE REPORT makes clear that § 20–743 incorporates the § 20–701 "prudent person" standard:

> *New section 20–743* states that a personal representative is personally liable for any breach of his or her fiduciary duty to interested persons. The duty of care is that of a "prudent person," section 20–701, above. Both the potential liability and the duty of care are already established in District law. See, *Moore v. Moore,* [47 App.D.C. at 27]; *Bernstein v. Brenner,* 320 F.Supp. 1080, 1088 (D.D.C. 1970) [holding personal representative personally liable when he acted imprudently].

*Id.* at 60–61. The Probate Code does not contain any language authorizing the testator, the beneficiaries, or the court to modify this standard of care, or to exonerate the personal representative for a breach of the standard. Moreover, at least one provision of the statute, D.C.Code § 20–909 (1989), raises the question whether an exculpatory clause could exonerate a personal representative who, with "negligence or willful fault," erroneously pays a claim.[12]

In this case, however, we need not decide whether the exculpatory clause in Mildred Cox's will, protecting the appellant in "the exercise of any discretionary power conferred upon the executor" absent "willful default or bad faith," could be invoked to relax the "prudent person" standard of care. Given the nature of appellant's defaults, the exculpatory clause is irrelevant. By its terms, that clause pertains only to the executor's exercise of "discretionary power," *e.g.,* settling claims. Appellant, however, has violated what clearly are *nondiscretionary* statutory duties to (1) account for and preserve all receipts, *see* D.C.Code §§ 20–721 to –726, and to (2) receive court approval before taking compensation from the estate, *see* D.C.Code § 20–751. We do not believe these particular duties, which are at the heart of orderly and accountable estate administration, come within the ambit of any arguably valid exculpatory clause excusing negligence in the exercise of discretion. It may be true that, in some instances, the Auditor–Master or the court could excuse certain minor failures to comply strictly with §§ 20–721 to –726 or § 20–751—an issue we do not decide. But, if so, such leniency would be attributable, ultimately, to the court's own discretion, not to an exculpatory clause in the will. To permit the testator to excuse a personal representative's lack of accountability would be, in effect, to permit non-judicial administration of an estate, contrary to our ruling in Part III. A. of this opinion.[13]

---

**12.** D.C.Code § 20–909 (1989), provides:

> (b) The personal representative may, at any time, pay any just claim which has not been barred, with or without formal presentation, but the personal representative is personally liable to any other claimant whose claim is allowed and who is injured by such payment if: ...
>
> (2) *the payment was made due to the negligence or willful fault of the personal representative.*
>
> (Emphasis added.)

**13.** Appellant argues that the testator's intent to hold him liable only for acts of bad faith or willful default should trump all statutory provi-

sions. He relies on *Henry v. Grimes,* 118 U.S. App.D.C. 160, 161, 334 F.2d 550, 551 (1964), for the proposition that "the executor does not derive his authority from the court, but from the will of the deceased." *Id.* Appellant, however, fails to cite the full sentence, which begins: "Unless the power to remove an executor for a particular cause can be found *in the statute* ..., it does not exist ... because the executor does not derive his authority from the court, but from the will of the deceased." *Id.* (emphasis added and internal citations omitted). Contrary to appellant's contention—which sounds, once again, like an argument for non-judicial estate administration—this sentence in *Henry* makes clear that the express will of a testator cannot

In sum, the statute expressly requires a personal representative to perform certain duties which, for orderly estate administration, cannot be considered optional or discretionary. We are unwilling to conclude that a provision of a will can lawfully qualify the specific provisions of a statute outlining the duties of a personal representative to provide an accounting and to obtain court approval of compensation before withdrawing the requested fee from estate funds. Appellant voluntarily agreed to accept the statutory duties of a personal representative as a condition of his appointment. See *supra* note 1; D.C.Code § 20–501. He cannot now hope to compromise those duties by reference to a provision in the will.

### IV.

We uphold the trial court order requiring appellant to reimburse the estate of Mildred Cox for $56,279.64 in improper payments. The record adequately supports these findings. Furthermore, we conclude that appellant's breach of his express statutory duties to account for expenditures from the estate and to obtain court approval before withdrawing compensation from the estate make him liable under the statute for the resulting losses to the estate—a liability which cannot be avoided by reference to the language of the will.

*Affirmed.*

override a clear command of the statute. *See also Washington Hospital v. Riggs Nat'l Bank,* 575 A.2d 719, 721 (D.C.1990) (unless contrary to law, court should give full effect to the testator's intent). In any event, *Henry* predated the District of Columbia Probate Reform Act of 1980.