510 A.2d 1087

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Irving V.M. ABB.

Misc. (Subtitle BV) No. 24, Sept. Term, 1985.

Court of Appeals of Maryland.

July 10, 1986.

Melvin Hirshman, Bar Counsel, for Attorney Grievance Com'n of Maryland.

Edward P. Camus, Riverdale, and Charles Duvall Smith, Upper Marlboro, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

McAULIFFE, Judge.

We here determine that Irving V.M. Abb is guilty of professional misconduct in the handling of a decedent's estate, and that a sixty day suspension from the practice of law is the appropriate sanction.

The misconduct occurred in Abb's handling of the estate of Sarah Elizabeth West, and principally consists of neglect, DR 6–101(A)(3), and of charging a clearly excessive fee, DR 2–106(A). Abb does not take issue with the finding of neglect, but he does except to certain findings of fact, and to findings that he was otherwise guilty of misconduct.

The respondent is fifty-nine years of age and was admitted to the bar of this Court in 1954. He currently maintains offices for the general practice of law in Frederick and Montgomery Counties, and he is principally involved in the defense of criminal cases. He had represented the decedent in several matters during her lifetime, and had drawn her last will. Shortly after Mrs. West's death in October, 1979, Abb was contacted by Mary Ellen Ney and Minnie I. Malone, sisters of the decedent and designated Personal Repre-

sentatives by the will, for assistance in the administration of the estate. Abb accepted the employment in late October 1979, and was paid a retainer of $1,500.00.

Although the estate was uncomplicated, and the assets consisted of only a small amount of personal property and a single parcel of improved real property, Abb did not file a petition for administrative probate until May of 1980. This delay was but the first in a series of delays and omissions in the handling of the estate. For a more detailed account of these delays and omissions we reproduce the findings of Judge Wenner, to whom this matter was referred for hearing:

"Letters of administration were granted to Mrs. Ney and Mrs. Malone on May 2, 1980. Although an inventory of the assets of the estate was due in August, 1980, it was not filed until January 13, 1981. A first account was due on February 9, 1981. It was filed on September 15, 1981, but only after several overdue letters from the Register of Wills for Montgomery County had been ignored by Abb and the Orphans' Court had issued a show cause order on September 14, 1981. The show cause order required the Personal Representatives to appear in that court on September 16, 1981, to show cause why their letters of administration should not be revoked for failure to file a first accounting. The account, when filed, was not perfected. After Abb ignored several notices from the Register of Wills to perfect it, another show cause order was passed by the Orphans' Court on February 8, 1982. As a result of that show cause order, the first account was perfected by the Personal Representatives, although not in proper form, and passed by the court on March 8, 1982.

"A second account, also overdue, was filed on July 30, 1982, after the Personal Representatives were ordered by the Orphans' Court to appear in that court on August 2, 1982, and show cause why their letters should not be revoked for failing to file it. The second account, as filed, was deficient in a number of respects. It failed to

include a notice to interested parties, contained mathmetical [sic] errors, did not include a proper order for commissions, and did not provide the Register of Wills with information concerning taxes and costs.

"After Abb failed to respond to requests of the Register of Wills for information and to a memorandum from Judge Cave, in which Judge Cave found no basis for allowing the commissions claimed in the proposed second account, the court issued another show cause order. That order was dated February 4, 1983, and required the Personal Representatives to appear on March 28, 1983, to show cause why their letters should not be revoked for failing to respond to Judge Cave's memorandum. This hearing was continued by Judge Cave, but was rescheduled for July 25, 1983, when Abb failed to respond to numerous requests, including one from Judge Cave himself, to complete the second account and close the estate.

"....On July 25, 1983, a hearing was held by Judge Cave on the show cause order passed on February 4, 1983. As a result of that hearing, Judge Cave passed an order dated August 16, 1983, whereby he approved total commissions of $8,032.85. He also denied the request for attorney's fees filed by Abb, and ordered him to refund any amounts previously disbursed to him [footnote omitted].

"Nothing more was done by Abb until June 11, 1984, when he filed a proposed 'long overdue corrected final accounting.' Several corrections needed to be made to the proposed corrected final account, and Abb was so notified, but he did nothing more. The estate was finally closed by John P. Brocard, Esquire, whose services had been obtained by Abb's counsel in the Grievance proceedings, on September 19, 1985."

The record fully supports the finding that the delays and omissions were the fault of the respondent, and that he was guilty of neglect in the handling of the estate.

Judge Wenner also found that Abb violated DR 6-101(A)(1) and (2) by handling a matter that he knew or

should have known he was not competent to handle, without associating with a lawyer competent to handle it; and by handling the estate without preparation adequate in the circumstances. In addition to the deficiencies previously noted, Judge Wenner found that Abb should have 1) advised the Personal Representatives to include within the estate a bank account having a balance of approximately $3,000.00 at the time of death, 2) advised the Personal Representatives to open a bank account in the name of the estate, and 3) obtained insurance to cover the improvements on the real property until it was sold. Abb has excepted to these findings and contends that the evidence of record does not prove incompetence, as opposed to neglect.

Concerning the $3,000.00 bank account that was not included as a part of the estate, Abb contends he was not told of it, and did not know of its existence. The record discloses that in 1966 Abb had prepared a Power of Attorney for Mrs. West in favor of Mary Ellen Ney, and that in August of 1979, Mrs. Ney opened an account at the Bank of Bethesda in the name of "Sarah Elizabeth West by Mary E. Ney Attorney in Fact or Minnie I. Malone." The account was funded by an initial deposit of $3,573.00, representing all the cash assets of Mrs. West, and at the time of her death, approximately two months later, the balance of the account stood at $3,073.00. Included in Abb's file were the notes of his initial conference relating to the handling of this estate, and within those notes was the entry "cash $3073.00." Additionally, there is evidence that the retainer paid to Abb was in the form of a certified check drawn on this account, and that at least one other check drawn on the account was given to Abb for reimbursement of appraisal expenses. This evidence adequately supports Judge Wenner's findings that Abb was aware of the existence of the account, and should have included it as an asset of the

estate and accomplished a transfer of the funds to an account in the estate name.[1]

The finding of neglect or incompetence in failing to procure insurance for the improvement to the real property is not supported by the record. The thrust of the complaint appears to have been the failure to procure fire insurance coverage, but the evidence fails to show that this decision was unreasonable under the circumstances.

Abb also excepts to the finding that he charged a clearly excessive fee, and he argues that the Orphans' Court for Montgomery County "ultimately approved the fees charged." His assertion is incorrect, and his exception must be overruled. As earlier noted, Abb initially received a retainer of $1,500.00. Thereafter, he charged and received from the Personal Representatives fees of $2,206.57 in December of 1981 and $4,000.00 in January of 1982, for a total of $7,706.57. At no time prior to the payment of these amounts did Abb petition the Orphans' Court for an allowance of attorney's fees. At the time he was retained, Abb had agreed to accept a fee of one-half the commissions allowed to the Personal Representatives.[2] Maryland Code (1974, 1985 Cum.Supp.) § 7–601 of the Estates and Trusts Article governs the allowance of compensation to a personal representative, and provides generally that the Orphans' Court may allow a commission not to exceed ten percent of the first twenty thousand dollars of property subject to

---

1. The original account established by Mrs. Ney ultimately served as the conduit for estate funds realized from the sale of real property, but the form of the account was never changed. Presumably, the bank permitted continued activity in the account immediately following the death of Mrs. West because it was unaware of her death, and thereafter because the checks were signed by both Personal Representatives.

2. Abb at one point contended the agreement was for payment of an attorney's fee of one-half the allowed commissions in addition to the retainer of $1,500. A later "consent" form prepared by Abb's attorney and signed by the Personal Representatives recites the agreed fee as one-half the approved commissions.

administration, and four percent of the excess over twenty thousand dollars. The value of real property is specifically excluded from this computation, but if real property is sold by the personal representative, the court may allow a commission not to exceed ten percent of the proceeds of the sale.[3]

The reported assets of this estate consisted of $80,000 gross receipts from the sale of the real property, and $328.50 in personal property. Thus, the maximum allowable commission was $8,032.85, consisting of ten percent of the proceeds of the sale of the real property, and ten percent of the value of the property subject to administration, *i.e.*, the personalty.[4] Even assuming competent and timely handling of the estate, Abb would have at most been entitled to charge a fee of $4,016.42. We agree with the finding of Judge Wenner that the fee of $7,706.57 charged and collected by Abb [5] "was clearly excessive in view of his continuous neglect of matters pertaining to settlement of the estate, the paucity of the services performed by him, and the fact that the Personal Representatives were only entitled to commissions in the amount of $8,032.85."

---

3. In the event the court is asked to approve an allowance of an attorney's fee, the court must also consider the commission allowed to the personal representative, and fix the amount of the fee and the commission so that the aggregate does not exceed the fair and reasonable total charge for administration of the estate. Maryland Code (1974, 1985 Cum.Supp.) § 7-602 of the Estates and Trusts Article; *Wright v. Nuttle*, 267 Md. 698, 298 A.2d 389 (1973).

4. Abb contends that the gross proceeds of the sale of real property are properly considered not only in the allowance of a commission on the sale, but also as "property subject to administration" for the purpose of determining additional commissions. Quite apart from the fact that this computation would permit a "doubling-up" of commissions, it is expressly prohibited by § 7-601 of the Estates and Trusts Article.

5. The Orphans' Court ultimately allowed a commission of $8,032.85 to the Personal Representatives, refused to allow attorney's fees, and ordered Abb to refund the fees he had collected. Abb did return the total fees to the estate, and was later paid $4,000.00 by the Personal Representatives, from their commissions.

## SANCTION

■ The neglect and incompetence demonstrated by Abb in the handling of this estate coupled with his attempt to collect a clearly excessive fee, constitutes significant misconduct. Furthermore, we note that Abb received a reprimand from the Review Board in 1977 for neglect of a legal matter entrusted to him. As Chief Judge Murphy said for the Court in *Attorney Griev. Com'n v. Marano*, 299 Md. 633, 643, 474 A.2d 1332 (1984), the imposition of a suspension from the practice of law may further the primary purpose of protecting the public by demonstrating the type of misconduct which this Court and the legal profession will not tolerate. We have determined that a suspension of sixty days is required as an appropriate sanction in this case. Accordingly, Irving V.M. Abb shall stand suspended from the practice of law in this State for a period of sixty days beginning thirty days after the filing of this opinion. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST IRVING V.M. ABB.