**In re Matthew J. TRAVERS, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 97–BG–114.**

District of Columbia Court of Appeals.

Argued Jan. 21, 1998.

Decided Dec. 28, 2000.

Matthew J. Travers, pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and KING, Senior Judge.*

TERRY, Associate Judge:

The Board on Professional Responsibility ("the Board") found that respondent Matthew J. Travers, a member of our bar, accepted an illegal fee and engaged in conduct that seriously interfered with the administration of justice. Given these findings, the Board has recommended that Mr. Travers be suspended for ninety days and that his reinstatement be conditioned on satisfaction of a $3,652.74 judgment against him. Mr. Travers contends that the record does not support a finding that he committed misconduct and that the recommended sanction is not warranted. Bar Counsel argues that there was substantial evidence that Mr. Travers engaged in misappropriation and that he should therefore be disbarred. We reject both of these arguments and adopt the recommendation of the Board.

---

* Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.

## I. Factual Background

The misconduct charges against Mr. Travers arose in 1983 when he accepted attorney's fees from an estate without filing with the court a petition for such fees, as was then required by D.C.Code § 20–751 (1981).[1] That statute provided in part:

(a) Reasonable compensation for work performed by a personal representative, special administrator or attorney with respect to administration of the estate pursuant to this title may be paid *upon approval by the Court of a request filed as provided in subsections (c) through (g).*

\* \* \* \* \*

(c) Each personal representative or special administrator *shall submit a written request to the Court for compensation for services performed by such personal representative or administrator or any attorney employed by either of them.* This request shall be accompanied by verified documentation of the following:

(1) the reasonable relationship of proposed compensation to the nature of the work performed;

(2) a statement by any attorney employed by the personal representative that as soon as feasible the attorney gave to the personal representative an estimate of costs and any change in costs for work to be performed with respect to administration of the estate;

(3) the reasonableness of the time spent, including the number of hours spent and the usual hourly compensation for the work performed;

(4) the results achieved; and

(5) a statement by the personal representative or special administrator that all of the time limitations imposed by the provisions of this title or by the Rules have been met....

\* \* \* \* \*

(f) The Court shall consider the factors set forth in subsection (c), as well as any exception filed to the request for compensation, prior to authorizing such compensation. [Emphasis added.]

On February 20, 1982, Ruth Mills died intestate with one principal asset in her estate: a house on Fairmont Street, N.W. ("the property"). After her heirs contacted him for legal advice in September 1983, Mr. Travers successfully prevented a threatened foreclosure on the property and agreed to assist them in the administration of the estate. On October 3, 1983, Mr. Travers prepared a petition for appointment of Sylvia Mills Simmons, Ruth Mills' daughter, as personal representative of the estate and filed consent and waiver forms signed by all interested parties. The forms stated that the signers agreed and consented to: (1) the sale of the property; (2) a five percent commission from the sale of the property, to be paid to Ms. Simmons; and (3) payment to Mr. Travers for his services in the amount of ten percent of the sale proceeds, plus expenses. At the hearing before the Board's hearing committee, Mr. Travers admitted that at the time he prepared and filed the consent forms, he was "very familiar" with section 20–751 of the Code, which clearly stated that compensation for an attorney's services could not be paid from estate assets without prior court approval.

Four days later, on October 7, Ms. Simmons was appointed personal representative of the estate, and she and Mr. Travers established an estate checking account. The signatures of both Ms. Simmons and Mr. Travers were required on any check drawn on the account. On October 18, 1983, they both signed a check for $3,000, drawn on the estate account, payable to

---

1. An amendment to the probate code in 1995 eliminated the requirement that an attorney seek court approval before receiving fees from an estate. This new provision, however, did not take effect until July 1, 1995, and was not made retroactive. Since Mr. Travers accepted the fees in 1983, this case is governed by the former version of D.C.Code § 20–751.

Mr. Travers and intended as a retainer for his legal services. Neither Ms. Simmons nor Mr. Travers obtained court approval for this payment. After the property was sold for $36,000 on May 2, 1985, Ms. Simmons and Mr. Travers drew a second check on the estate account payable to Travers, this time in the amount of $652.74. Once again, neither Ms. Simmons nor Mr. Travers filed the appropriate petition with the court before signing the check.

Mr. Travers filed a statement of account for the estate on December 4, 1986. Because Ms. Simmons had failed to complete the requirements for the final accounting of the estate, she was removed as personal representative on May 12, 1988. Werner Strupp was appointed as her successor, and on November 17, 1988, he filed a motion to refer the matter to the court's auditor-master for an accounting of Ms. Simmons' administration of the estate. The auditor-master found in her report that Mr. Travers had been paid legal fees in the amount of $3,652.74 from the estate without prior court approval and recommended that judgment be entered against him and Ms. Simmons if that amount were not forwarded to the estate within ten days. Mr. Travers filed exceptions to the auditor-master's report, but after a hearing the probate court ratified the report and entered judgment against Mr. Travers. This court affirmed that decision in an unpublished Memorandum Opinion and Judgment. *Travers v. Strupp,* No. 91–PR–1427 (D.C. April 16, 1993).[2] We specifically held that since Mr. Travers had been retained to assist in the administration of the estate, he was subject to the requirements of D.C.Code § 20–751. "Because the property was an asset of the estate, any legal action Travers undertook with regard to the property was an action on behalf of the estate...." Appendix, *infra* at 253. Mr. Travers filed a petition for rehearing en banc, which was denied on July 19, 1993.

Despite our ruling, Mr. Travers did not pay the $3,652.74 judgment. Mr. Strupp made futile demands on Mr. Travers for reimbursement on August 13 and September 10, 1993, and filed a complaint with the Clients' Security Trust Fund on October 22, 1993. On February 10, 1994, Mr. Travers filed with the court a request for compensation for his legal services to the estate in the amount of $3,652.74. Because he had not satisfied the outstanding judgment against him in the same amount and therefore already had the money in his possession, the court denied his request and later denied as well his motion for reconsideration.

The Office of Bar Counsel conducted an investigation and, on April 7, 1995, formally charged Mr. Travers with violating Disciplinary Rules (DR) 2–106(A), 9–103(A), and 1–102(A)(5), and Rules of Professional Conduct 1.15(a), 1.16(d), and 8.4(d).[3] After an evidentiary hearing,[4] a hearing committee found that Mr. Travers violated DR 2–106(A) by receiving a fee without obtaining permission as required by D.C.Code § 20–751, violated DR 9–103(A) and Rule 1.15(a) by negligently misappropriating client funds, and violated Rule 8.4(d) by failing to pay the judgment, which seriously interfered with the administration of justice. The committee therefore recommended that he be suspended from the practice of law for three months and that he be required to make restitution in the amount of $3,652.74, plus interest, before reinstatement. After both Bar Counsel and Mr.

---

**2.** Our decision in *Travers v. Strupp* is reproduced as an appendix to this opinion.

**3.** The former Disciplinary Rules apply to conduct before January 1, 1991. On that date the Disciplinary Rules were superseded by the Rules of Professional Conduct, which apply to acts committed thereafter.

**4.** Before the hearing, Mr. Travers filed a motion to defer the disciplinary proceedings pending his appeal from the denial of his claim for compensation. The Board, noting that the appeal involved a different issue from that presented in the disciplinary action, denied the motion.

Travers filed exceptions[5] to the hearing committee's report, the Board issued its own report, upholding the committee's findings that Mr. Travers violated DR 2–106(A) and Rule 8.4(d), but finding that Mr. Travers' conduct did not amount to misappropriation. The Board therefore recommended that he be suspended for ninety days, with reinstatement conditioned on satisfaction of the $3,652.74 judgment. The matter comes before us on the Board's recommendation and the exceptions taken by both Bar Counsel and Mr. Travers.

## II. Respondent's Misconduct

■ As in all disciplinary cases, we must accept the Board's findings of fact "unless they are unsupported by substantial evidence of record." D.C. Bar Rule XI, § 9(g)(1); *see, e.g., In re Pierson*, 690 A.2d 941, 947 (D.C.1997) (citing cases). The Board reviews the hearing committee's findings and conclusions under the same standard unless they are determinations of "ultimate facts," which are actually conclusions of law. *See In re Micheel*, 610 A.2d 231, 234 (D.C.1992).

### A. *Illegal fee*

■ The hearing committee found that Mr. Travers did not adhere to the requirements of D.C.Code § 20–751 and therefore accepted an illegal fee in violation of DR 2–106(A).[6] The Board upheld this finding, and Bar Counsel does not take exception to it. The record makes clear that Mr. Travers accepted compensation from the estate without prior court approval, contrary to the express language of D.C.Code § 20–751. This court has specifically held that a violation of D.C.Code § 20–751 is also a violation of DR 2–106(A). *In re Ray*, 675 A.2d 1381, 1385–1386 (D.C.1996). Mr. Travers maintains, however, that

D.C.Code § 20–751 did not apply to him because he was not retained to perform services for the estate, but merely to stave off the impending foreclosure on the property that was the estate's chief asset.

■ We previously resolved this very issue against Mr. Travers in our affirmance of the judgment in *Travers v. Strupp*. We held that Mr. Travers was indeed performing services for the estate because his work "in forestalling foreclosure on [the] property, obtaining financing for its renovation, and then facilitating its sale, would have involved both payment of debts against the estate ... and preparation for distribution of the estate...." Appendix, *infra* at 253. "Because the property was an asset of the estate, any legal action Travers undertook with regard to the property was an action on behalf of the estate," and thus we held that Mr. Travers was subject to D.C.Code § 20–751 and that any payment made to him would have had to be in accord with that statute. Appendix, *infra* at 253. Because that decision is binding here under principles of collateral estoppel, *see In re Robertson*, 618 A.2d 720, 723 (D.C.1993); *In re Mandel*, 605 A.2d 61, 62 (D.C.1992); *In re Richardson*, 602 A.2d 179, 180 (D.C.1992), we reject Mr. Travers' renewed contention that he was not subject to the requirements of D.C.Code § 20–751. That contention is no more meritorious now than it was in *Travers v. Strupp*.

Travers also argues that his conduct is governed by the provisions of D.C.Code § 20–752, rather than D.C.Code § 20–751. Section 20–752, unchanged since its enactment in 1980, provides:

> Without regard to the provisions of section 20–751, when a personal representative or a person nominated as personal representative defends or prose-

---

5. Mr. Travers also filed motions to set aside the committee's report and to stay all proceedings until other court proceedings had been decided. The Board denied the motions, noting that his objections would be considered upon full review by the Board.

6. DR 2–106(A) provides that a lawyer "shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

cutes in good faith and with just cause any proceeding relating to the decedent's estate, whether successful or not, such personal representative shall be entitled to receive from the estate any necessary expenses and disbursements relating to such proceeding.

In the circumstances of this case, we need not consider whether section 20–752 relieved Mr. Travers of the need to seek court approval under section 20–751 before accepting his fees. In *Travers v. Strupp* this court held that Travers' fees were for legal work done in connection with the administration of the estate, for which any payment would have to be made in accordance with section 20–751. His present argument, that he was subject to section 20–752 rather than section 20–751, is thus barred by collateral estoppel.

■ We therefore conclude that there was sufficient evidentiary support for the Board's and the hearing committee's findings that Mr. Travers accepted an illegal fee in violation of DR 2–106.[7]

### B. *Interference with the administration of justice*

■ The Board accepted the committee's finding that Mr. Travers violated Rule 8.4(d), which states that it is misconduct for an attorney to "[e]ngage in conduct that seriously interferes with the administration of justice," by failing to pay the $3,652.74 judgment rendered against him and affirmed by this court in *Travers v. Strupp.* To establish a violation of that

rule, Bar Counsel must make a three-part showing:

First . . . the conduct must be improper. That is, the attorney must either take improper action or fail to take action when, under the circumstances, he or she should act. . . . This conduct may be improper, for example, because it violates a specific statute, court rule or procedure, or other disciplinary rule. . . . Second . . . the conduct itself must bear directly upon the judicial process (*i.e.,* the "administration of justice") with respect to an identifiable case or tribunal. This of course will very likely be the case where the attorney is acting either as an attorney or in a capacity ordinarily associated with the practice of law. . . . And third, the attorney's conduct must taint the judicial process in more than a *de minimis* way; that is, at least potentially impact upon the process to a serious and adverse degree.

*In re Hopkins,* 677 A.2d 55, 60–61 (D.C. 1996) (citations omitted).[8] We have held that conduct such as failure to appear for a hearing constitutes a violation of Rule 8.4(d), *In re Lyles,* 680 A.2d 408, 417 (D.C. 1996), as does failure to file a timely notice of appeal, *In re Drew,* 693 A.2d 1127, 1133 (D.C.1997). In this case we are satisfied that Mr. Travers' refusal to satisfy the judgment, a flagrant violation of a court order, was also a violation of Rule 8.4(d). That refusal, moreover, had more than a *de minimis* effect on the judicial process because the personal representative of the estate had to make repeated demands for payment, had to file a complaint with the

---

7. We also agree with the Board that Mr. Travers did not violate Rule 1.16(d). That rule provides:

In connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is not entitled, and refunding any advance payment of fee that has not been earned. . . .

There was no evidence that Mr. Travers did not earn his fee or that it was unreasonable;

consequently, there is no basis for finding a violation of Rule 1.16(d).

8. This three-part standard refers to the language of DR 1–102(A)(5), which was supplanted by Rule 8.4(d) in 1991. It remains binding, however, because "[c]onduct prohibited by Rule 8.4(d) includes conduct prohibited under former DR 1–102(A)(5), and the case law interpreting DR 1–102(A)(5) has been incorporated into Rule 8.4(d)." *In re Hopkins,* 677 A.2d at 56–57 n. 1; *see* D.C. Rule of Professional Conduct 8.4, comment 2.

Clients' Security Trust Fund, and, most importantly, has been unable to close the estate and distribute its assets for several years.

█ Mr. Travers contends that his failure to satisfy the judgment did not interfere with the closure of the estate because his subsequent request for compensation in the amount of $3,652.74 also prevented closure. On November 16, 1995, the probate court denied that request because he had not satisfied the judgment against him for $3,652.74. Mr. Travers now argues that because that denial, from which he noted an appeal, constituted an outstanding claim against the estate, it too prevented the personal representative from distributing the estate. We find this argument unpersuasive. Had Mr. Travers satisfied the judgment, the court would have heard and substantively ruled on his motion for compensation. He simply cannot rely on the same conduct that violated Rule 8.4(d) to argue that he should not be held culpable under that rule. If anything, his argument provides further evidence that his refusal to satisfy the judgment interfered with the administration of justice.[9] We note, in any event, that some time after the present case was argued, another division of this court affirmed the November 1995 denial of Mr. Travers' request for compensation in an unpublished memorandum opinion. *See In re Estate of Mills*, No. 95–PR–1753 (D.C. May 13, 1999). Accordingly, we uphold the

Board's finding that Mr. Travers violated Rule 8.4(d).[10]

### C. *Misappropriation*

█ The hearing committee found that Mr. Travers engaged in misappropriation, in violation of DR 9–103(A) and Rule 1.15(a), because his acceptance of illegal fees constituted an unauthorized use of estate funds entrusted to him. The committee further found that the misappropriation was negligent because Mr. Travers "sincerely believed" that D.C.Code § 20–751 did not apply to him, and that his actions in obtaining the consents of the heirs and filing those consents with the court "support a finding that he was not reckless and that he was [in] no way trying to mislead [the court] or conceal his conduct." Bar Counsel took exception to the finding of negligent misappropriation, arguing that Mr. Travers' misappropriation was either intentional or reckless. The Board, finding that Mr. Travers did not have exclusive control of the estate checking account and therefore was not entrusted with estate funds, concluded that he did not commit any form of misappropriation. Bar Counsel disagrees with that conclusion and renews his contention that Mr. Travers engaged in intentional or reckless misappropriation.

█ We have interpreted both DR 9–103(A) and Rule 1.15(a) to prohibit "any unauthorized use of client's funds entrusted to [an attorney], including not only stealing but also unauthorized temporary

---

9. We acknowledge Mr. Travers' concern that if he had forfeited the $3,652.74, he might not have received any compensation for his services. However, his chosen method of self-help—retaining the money in violation of a court order and filing a motion for compensation—was nonetheless improper. Even though he may have had a right to receive compensation for his work, any "right to self-help is strictly limited by law and, in the lawyer's case, by the rules of professional conduct." *In re Haar*, 698 A.2d 412, 424 (D.C.1997).

10. Mr. Travers was originally charged with violating DR 1–102(A)(5), the predecessor of

Rule 8.4(d). The Board, however, accepted the committee's finding that Mr. Travers did not violate that rule because there was not sufficient evidence that Mr. Travers interfered with the administration of justice before January 1, 1991, the effective date of Rule 8.4(d). Because the estate could not have been closed until at least May 1991, when the auditor-master filed her final report, and because the judgment against Mr. Travers was not affirmed by this court until April 1993, we agree with the Board that Mr. Travers did not interfere with the administration of justice before January 1991 and thus did not violate DR 1–102(A)(5).

use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983) (citation omitted); *accord, e.g., In re Pierson*, 690 A.2d at 947 (citing *Harrison* and other cases). "Improper intent need not be shown." *In re Ray*, 675 A.2d at 1386 (citations omitted). There are, therefore, three elements of misappropriation: (1) that client funds were entrusted to the attorney; (2) that the attorney used those funds for the attorney's own purposes; and (3) that such use was unauthorized. At issue in this case is the first element, namely, whether an attorney who is a joint signatory on an estate account is "entrusted" with the funds in that account. That is not an easy question to answer. The case law is sparse and inconclusive, especially on the question of whether the attorney must have exclusive control of client funds, as opposed to joint control with the representative of the estate.

■ We conclude, in the particular circumstances of this case, that we need not attempt to answer that question. Assuming, without deciding, that the hearing committee was correct in finding misappropriation, we agree with the hearing committee—substantially for the reasons stated by the committee—that any misappropriation was negligent and not reckless or intentional. This finding is supported by the evidence and is not clearly errone-ous; accordingly, we leave for resolution in some future case the more difficult issues raised by Bar Counsel.[11]

### III. SANCTION

■ Finally, we must determine an appropriate sanction for Mr. Travers' violations of DR 2–106(A) and Rule 8.4(d).[12] We generally defer to the Board's sense of justice and its recommended sanction. *See, e.g., In re Goffe*, 641 A.2d 458, 463 (D.C.1994) (Board's recommendation of a sanction "comes to us with a strong presumption in favor of its imposition"); *In re Lenoir*, 604 A.2d 14, 15 (D.C.1992). Our rules require us to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar Rule XI, § 9(g)(1). In this case, the Board, believing that the upper boundary of the range of penalties for taking an illegal fee should be comparable to that for negligent misappropriation—a six-month suspension—and noting that Mr. Travers was admittedly familiar with D.C.Code § 20–751, that his sanction should be enhanced because of the Rule 8.4(d) violation, and that he had a record of prior discipline,[13] has recommended that he be suspended for ninety days, with reinstatement conditioned on satisfaction of the $3,652.74 judgment. We accept the Board's recommendation.

---

11. Bar Counsel, citing *In re Burton*, 472 A.2d 831, 837, *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984), contends that misappropriation occurs "whenever an attorney assumes a fiduciary relationship and violates his duty." *Burton* does not support that assertion. In *Burton* the attorney deposited client funds into a trust account over which he had sole power and subsequently made unauthorized withdrawals from the account for his own personal and business uses. It was that act, and that act alone, which constituted misappropriation. It is not enough for an attorney simply to violate a fiduciary duty; the attorney must have been "entrusted" with client funds and must have used those funds without permission in order to be found guilty of misappropriation.

12. Because we conclude that Mr. Travers did not engage in reckless or intentional misappropriation, we reject Bar Counsel's argument that he should be disbarred on that ground.

13. According to the Board's report, Mr. Travers received an informal admonition in 1989 for failing to return an unearned fee promptly upon discharge or withdrawal, in violation of DR 2–110(A)(3), and for failing to appear, on at least seven occasions, for oral examinations following entry of judgment against him in connection with his violation of DR 1–102(A)(5).

In deciding whether a sanction is appropriate, we consider a variety of factors, including "the nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *In re Lenoir*, 585 A.2d 771, 774 (D.C. 1991) (citations omitted). We normally "evaluate each case on its particular facts . . . taking into consideration such factors as mitigating and aggravating circumstances." *In re Ross*, 658 A.2d 209, 211 (D.C.1995) (citations omitted).

This court has imposed a broad spectrum of sanctions for Rule 8.4(d) violations. *In re Ray*, in which the attorney was suspended for six months, appears to be the high-water mark for sanctions in an illegal fee case. *See* 675 A.2d at 1389. *Ray* was a more egregious case than the one now before us: the attorney in *Ray* put the estate at risk and also engaged in the unauthorized practice of law, albeit in another state. In *In re Hudock*, 544 A.2d 707, 710 (D.C.1988), a reciprocal disciplinary case from Virginia in which the attorney accepted an illegal fee, we ordered only a public reprimand, the same sanction that had been imposed in Virginia. In that case, however, the attorney's misconduct consisted solely of failing to disclose a contingency fee agreement in a workers' compensation hearing. We agree with the Board that the instant case lies somewhere between *Ray* and *Hudock* and that the sanction should accordingly fall between a six-month suspension and a public reprimand. We must also take into account, of course, Mr. Travers' failure to repay the illegal fee in violation of a court order and his previous disciplinary record. Weighing all of these factors, we think the Board's

recommended sanction of a ninety-day suspension is reasonable and is not inconsistent with previous sanctions for comparable conduct.[14]

We also emphatically agree that Mr. Travers should satisfy the judgment against him before being reinstated. D.C. Bar Rule XI, § 3(b) gives this court authority to "require an attorney to make restitution . . . to persons financially injured by the attorney's conduct . . . as a condition of probation or of reinstatement." In *In re Ray* we ordered restitution when the attorney engaged in the unauthorized practice of law and accepted a fee from an estate without authorization. 675 A.2d at 1389 (citing *Godette v. Estate of Cox*, 592 A.2d 1028 (D.C.1991) (personal representative must reimburse the estate for fee taken without court approval)). In addition, we specifically held in *Travers v. Strupp* that Mr. Travers was liable to the estate for $3,652.74; consequently, he continues to be in violation of Rule 8.4(d) by failing to pay that amount to the estate. *See In re Steele*, 630 A.2d 196, 197–198 (D.C.1993) (accepting the Board's recommendation that attorney pay restitution in the amount of $300 when she had failed to satisfy a judgment entered against her). We see absolutely no reason not to require Mr. Travers to satisfy the outstanding judgment of $3,652.74 as a condition of reinstatement.

It is therefore ORDERED that respondent, Matthew J. Travers, shall be suspended from the practice of law in the District of Columbia for a period of ninety days, effective thirty days from the date of this opinion, and that as a condition of reinstatement to membership in the Bar he shall pay the $3,652.74 judgment owed to the estate, plus all applicable interest.

14. Bar Counsel, citing *In re Newsome*, No. D 34–79 (D.C. November 21, 1979), in which an attorney was disbarred for taking an illegal fee from an estate, seeks "at least a six-month suspension" in the event that we conclude that Mr. Travers did not engage in misappropriation. In *Newsome*, however, the attorney accepted a fee that not only was illegal, but also far exceeded the potential fee; in addition, his misconduct was aggravated by his failure to participate in the disciplinary proceedings. Because neither of these factors is present in this case, *Newsome* is inapposite.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

No. 91–PR–1427

Matthew James Travers, Appellant

v.

Werner Strupp, Appellee

Appeal from the Superior Court
of the District of Columbia

(Hon. Emmet G. Sullivan, Trial Judge)

(Argued April 14, 1993 Decided
April 16, 1993)

Before Ferren, Schwelb, and Farrell,
Associate Judges.

### MEMORANDUM OPINION AND JUDGMENT

This appeal concerns a dispute over appellant's entitlement to legal fees for services rendered in connection with the sale of a home that constituted the sole asset in the personal estate of Ruth E. Mills. Because we agree with the Probate Division that appellant failed to comply with the requirements of D.C.Code § 20–751 (1989 Repl.) concerning compensation for work performed in administering an estate, we affirm the judgment against appellant for the sum of $3,652.74.

Ruth Mills died intestate on February 20, 1982. On or about September 22, 1983, two of Mills' daughters, Sylvia Mills Simmons and Cynthia Denise Mills, contacted appellant Michael James Travers for legal advice concerning an impending foreclosure on the decedent's house at 1240 Fairmont Street, N.W., Washington, D.C., in which they were still living. Travers proposed that the sisters obtain financing to pay off the foreclosing party and refurbish the property and then sell it. For his services in connection with these transactions, Travers requested a fee of ten percent of the sales price, to which the sisters and all known heirs agreed. Meanwhile,

on October 3, 1983, Sylvia Mills Simmons filed a petition for appointment as personal representative of Ruth Mills' estate, which the Probate Division duly granted. Eighteen months later, Simmons filed with the Probate Division a petition to sell the property at 1240 Fairmont with the consent of the heirs. On May 1, 1985, the court issued an order authorizing the sale, and the property was sold for $36,000. Thereafter, Simmons paid Travers $3,652.74.

Simmons was subsequently removed as personal representative of the Mills estate on May 12, 1988, for failure to complete the requirements for presentation of her first and final account of the estate. The court appointed Werner Strupp, the appellee in this case, as successor personal representative. Upon Strupp's motion, the court referred this matter to an auditor-master for an accounting of Simmons's administration of the estate. In the course of preparing her report, the auditor-master requested Travers to submit a request for compensation and warned him that, absent court approval of the payment he had received, she would have to find that his fee should be paid back into the estate. Travers responded with a letter detailing how and why Simmons had paid him, but he never filed a formal request for compensation in accord with the requirements of D.C.Code § 20–751. Accordingly, the auditor-master's report recommended judgment for $3,652.74 against Simmons and Travers jointly and severally. Travers filed objections to the report, and a hearing was held on October 24, 1991. At the hearing, Travers took the position that he was not required to file a petition for compensation because the court had already in effect approved his fee when it authorized the sale of the estate property. Finding Travers' claim unpersuasive, the court ratified the auditor-master's report and entered judgment against Travers.

D.C.Code § 20–751 [1] "replaced a customary percentage test for determining

1. [Footnote omitted.]

compensation for personal representatives *and attorneys* with a procedural framework requiring the personal representative to submit a written request for compensation to the court, accompanied by verified and substantiating documents." *Poe v. Noble,* 525 A.2d 190, 193 (D.C.1987) (emphasis added). "The purpose of the documentation is to aid the court in its determination of the reasonableness of the requested fee for apparently the sole purpose of protecting the interests of claimants under the will." *Id.*

Travers claims on appeal that he was not subject to these requirements because he was not retained to administer the estate. Although there is no statutory definition of the phrase "administration of the estate," BLACK'S LAW DICTIONARY 44 (6th ed.1990) defines administration of estates as follows:

> The management and settlement of the estate of an intestate decedent, or of a testator who has no executor, performed under the supervision of a court, by a person duly qualified and legally appointed, and usually involving: (1) the collection of the decedent's assets; (2) payment of debts and claims against the estate; (3) payment of estate taxes; (4) distribution of the remainder of the estate among those entitled thereto. The administration of an estate runs from the date of an individual's death until all assets have been distributed and liabilities paid.

It is undisputed that the property at 1240 Fairmont Street was an asset of the Mills estate. Consequently, the work that Travers did in forestalling foreclosure on this property, obtaining financing for its renovation, and then facilitating its sale, would have involved both payment of debts against the estate (*i.e.,* paying off the foreclosing party) and preparation for distribution of the estate (liquidating the property by selling it).

Travers does not claim that in carrying out these tasks he was not acting as a lawyer. Nor do we find persuasive his argument that he was not actually working for Simmons in her capacity as personal representative, but for all of the Mills children. This position elevates form over substance. Because the property was an asset of the estate, any legal action Travers undertook with regard to the property was an action on behalf of the estate, regardless of whether or not Simmons had been formally appointed personal representative. Furthermore, Travers listed himself as Simmons' attorney on her petition for appointment, and virtually all of his work, except for the initial filing to forestall foreclosure, was completed after Simmons received her appointment. We fail to see, therefore, how Travers' services would not constitute legal work done in connection with the administration of the estate. Accordingly, we conclude that any payment to Travers would have had to be in accord with the provisions of D.C.Code § 20–751.

Because Travers was subject to the provisions of § 20–751, his other arguments on appeal must fail as well. He argues, first, that his fee agreement constituted an equitable lien on the property and was, therefore, enforceable at the time the property was sold. This argument might be tenable were Travers an ordinary creditor. But the fact that his claim against the estate was for legal services rendered to the estate means that he could not collect without fulfilling the requirements of § 20–751.

Second, Travers contends that the court's order authorizing sale of the property also approved his fee, because it permitted the "personal representative [to] convey the property ... free of all liens...." Both the auditor-master and the trial court rejected this position. The trial court noted that "this language ['free of all liens'] normally refers to liens of record against the subject property.... It doesn't refer to your [Travers'] lien for attorney's fees or services rendered in your capacity as the attorney." Given that the sale au-

thorization order makes no specific reference to attorney's fees in any way, we agree with the trial court's interpretation of the phrase "free of all liens." Moreover, even if Travers were right in his claim that the court had approved of his fee, the court would have abused its discretion in so doing, since it may not approve a fee for the administration of an estate without making adequate findings of fact setting forth the basis for the fee. *See Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989).

In sum, we conclude that the trial court did not abuse its discretion in entering judgment against Travers for the $3,562.74 he received in fees from the estate. *See Godette v. Estate of Cox,* 592 A.2d 1028, 1036 (D.C.1991) (upholding order compelling personal representative to reimburse estate for improper payments, where representative failed to account adequately for expenditures from the estate and did not obtain court approval before withdrawing compensation from the estate). There is no inequity in this outcome, since all Travers had to do to justify his fee was to file a request for compensation in accord with D.C.Code § 20–751, as he was asked to do by the auditor-master. Why he refused to do so remains a mystery.

Accordingly, it is

ORDERED AND ADJUDGED that the judgment on appeal is hereby affirmed.