*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-BG-859

IN RE QUINNE HARRIS-LINDSEY, RESPONDENT.

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 451238)

On Report and Recommendation of the
Board on Professional Responsibility
(Board Docket No. 15-BD-042)
(DDN 384-02)

(Argued September 26, 2018                    Decided December 10, 2020)

*Hamilton P. Fox*, *III*, Disciplinary Counsel, with whom *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel at the time the brief was filed, for petitioner.

*Abraham C. Blitzer* for respondent.

Before GLICKMAN, THOMPSON and BECKWITH, *Associate Judges*.

Opinion for the court by *Associate Judge* THOMPSON.

Concurring opinion by *Associate Judge* GLICKMAN, in which *Associate Judge* BECKWITH joins, at page 27.

THOMPSON, *Associate Judge*:   Between 1994 and 2002, respondent Quinne Harris-Lindsey was the required second signatory for withdrawals from a guardianship-estate account.  The other required signatory was the court-appointed guardian of the estate account, who was respondent's cousin and client.  The

record in this case establishes that on three occasions in 1995, 1996, and 1999, with the client's consent, respondent authorized withdrawals from the account to pay her fees for the representation, and did so without prior court approval. The primary issue before us is whether respondent thereby misappropriated estate-account funds.

"Our disciplinary cases define misappropriation as any *unauthorized* use of client's funds *entrusted* to the lawyer[.]" *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) (italics added, internal quotation marks and brackets omitted). A majority of the Board on Professional Responsibility (the "Board") concluded that Disciplinary Counsel failed to prove misappropriation by clear and convincing evidence. In summary, the Board majority found that neither the court (the Superior Court Probate Division) nor the client had entrusted any funds to respondent and that respondent's withdrawal of the funds was not unauthorized because it was made with the client's consent.

Disciplinary Counsel, petitioner in this matter, urges us to hold that on the facts described above, respondent committed negligent misappropriation. Disciplinary Counsel emphasizes that "[b]ut for [respondent's] signature, the funds

[in question] would [have] remain[ed] intact" and that respondent's client had "no right to disburse the[] [funds] on her own authority." Acknowledging, however, that this court has not previously found misappropriation in a case in which two signatures were required for disbursal of funds from an account, Disciplinary Counsel states that "it may be appropriate to apply the ruling [he urges] prospectively only."

Also before us is a recommendation by a plurality of the Board that we sanction respondent only by imposing an informal admonition for what the Board unanimously found was her failure to satisfy Rule of Professional Conduct 1.15 (a)[1] and (former) D.C Bar Rule XI, § 19(f) record-keeping requirements in connection with her representation of the guardian of the estate account.[2] Like the

---

[1] The Board commented that the record "is silent" as to why Hearing Committee Number One ("the Hearing Committee"), elected to base its record-keeping-violation finding on § 19(f) and not also on Rule 1.15(a). The Hearing Committee did note that § 19(f) was deleted effective March 1, 2016, as duplicative of the "complete records requirement of Rule 1.15 (a)."

[2] In addition, a majority of the Board determined, after considering a charge arising out of the same nucleus of facts, that respondent's conduct did not seriously interfere with the administration of justice within the meaning of Rule 8.4(d), finding that it "did not taint the judicial process in more than a *de minimis* way." We accept that finding and the Board's finding as to the record-keeping violation without further discussion.

Board plurality, Disciplinary Counsel states that an informal admonition is warranted for respondent's record-keeping violation.

As explained below, one Division member agrees with the Board majority that misappropriation was not proven in this case. A majority of the Division concludes that facts satisfying the elements of misappropriation were proven by clear and convincing evidence, but that the Division's interpretation as to whether there was "entrustment" of the estate-account funds and use of the funds "without authorization" should apply only prospectively. Accordingly, the Division declines to impose a sanction on respondent for misappropriation. The Division is also unanimous in accepting the recommended sanction of an informal admonition for respondent's record-keeping violation.

## I.  Factual and Procedural History

In 1994, the Probate Division appointed respondent's cousin, Anglia Fulwood, to be guardian of the estate account of Ms. Fulwood's minor child D.F., who had been designated by a deceased relative as the beneficiary under a life insurance policy. Ms. Fulwood asked respondent to be her attorney in connection

with the estate account. Respondent, who had been admitted to the Pennsylvania Bar in 1993 but at the time had not yet been admitted in the District of Columbia, was working as a paralegal at a personal injury law firm and was able to get a partner at the firm to agree to enter an appearance on behalf of Ms. Fulwood. The Partner disclaimed substantive involvement with the probate matter, telling respondent "[t]his is your case, you handle it."

The Hearing Committee and Board found that in December 1994, respondent deposited the insurance proceeds into an account at Independence Federal Savings Bank on behalf of the minor, with Ms. Fulwood identified as the guardian and with an opening balance of $40,760.75 from the life insurance policy proceeds. As shown on the signature card for the estate account, two signatures — Ms. Fulwood's and respondent's — were required for withdrawals from the account. The signature card for a second, money market fund account, "denominated [D.F.], minor/Anglia Fulwood, gdn./Quinne Harris Lindsey, Atty.," which was opened at the same bank, likewise required both Ms. Fulwood's and respondent's signatures for withdrawals.[3] The record contains documentary

---

[3] The second account was funded when, as further described *infra*, respondent repaid amounts that she had accepted as attorney's fees, but that had been withdrawn from the first account for that purpose without court approval.

evidence that respondent and Fulwood co-signed checks making withdrawals, and the Hearing Committee found that both women's signatures were required for withdrawals from the accounts.

Respondent told Ms. Fulwood that she did not want to be compensated for her work in connection with the estate account. However, after respondent spent considerable time and effort on the matter, "Ms. Fulwood insisted that respondent be paid, and respondent relented." In 1995 and 1996, without prior court approval, but with Ms. Fulwood's consent, respondent withdrew two installments of attorney fees from the estate account: $1,650, in the form of a cashier's check, on or about December 27, 1995, and an additional $1,400, also as a cashier's check, on or about February 27, 1996. The Board found that Disciplinary Counsel did not present evidence that respondent "could have obtained or did obtain a cashier's check from the estate accounts without the client's signature on the check request form." In addition, at various times, Ms. Fulwood withdrew funds from the estate, without prior court approval but with respondent's consent, to pay for expenditures related to the minor. Respondent filed a petition for "retroactive approval" of Ms. Fulwood's 1996 withdrawals totaling $1,400. The Probate Division granted the petition in an April 11, 1997, order that did not include any admonition that prior court approval was required before expenditures could be made. As to her own

withdrawals in 1995 and 1996, respondent testified to her understanding at the time that "according to [a form issued by] the Register of Wills, attorney's fees are included under the category of administrative expenses and therefore do not require an order of the [c]ourt for disbursement."

On June 3, 1996, respondent was admitted to the District of Columbia Bar. Sometime before March 1997, respondent spoke with a Probate Division employee who told her that prior court approval was required to withdraw attorney fees. That same month, respondent filed an accounting for the period of October 6, 1995, through December 31, 1996, in which she reported the two disbursals for attorney fees, stated that she had been unaware that prior court approval was required for the corresponding withdrawals, and informed the court that she had since reimbursed the estate for the two payments.[4] The Hearing Committee found that Respondent repaid $3,069.46 for the two checks previously issued to her (including a $19.46 charge for a withdrawal penalty) into the money market account at Independence Federal Savings Bank.

---

[4] On March 13, 1997, respondent also filed a praecipe with the Probate Division noting the withdrawal of the supervising attorney (the partner from her law firm) and indicating that respondent would continue as sole counsel to the guardian, Ms. Fulwood.

In December 1997, respondent filed an accounting covering the period from January 1 through September 30, 1997, and disclosed an $800 cash disbursement to Ms. Fulwood, made from one of the estate accounts in February 1997. On or about March 3, 1998, Ms. Fulwood filed a petition for retroactive approval of that disbursement, which the petition stated was used for a bond, child care expenses, school uniforms, and supplies. The Probate Division granted the petition the following week in an order that included the following admonition: "ORDERED, that Anglia Fulwood is admonished not to expend estate assets without prior court authorization." The court mailed a copy of the order to respondent, who testified that she was timely aware of it.

On October 1, 1999, respondent received a payment of $2,250 paid by a check drawn on the estate account, signed by Ms. Fulwood and respondent.[5] The $2,250 withdrawal was not disclosed to the Probate Division until more than eighteen months later, when, on June 21, 2001, respondent submitted an accounting covering the period from October 1, 1999, to June 11, 2001.[6]

---

[5] Respondent testified before the Hearing Committee that she and Ms. Fulwood agreed that the latter would assign her commission as guardian to respondent "in lieu of attorneys' fees."

[6] The dissenting Board members found that the October 1, 1999, withdrawal was respondent's only act of reckless misappropriation.

On July 6, 2001, after reviewing that accounting, the Auditor for the Register of Wills requested that respondent explain both the October 1, 1999, withdrawal and her failure to file the estate's tax return for 2000. The Auditor also advised the Probate Division that respondent had accepted fees without prior court approval and recommended that the court direct respondent to redeposit the $2,250 fee and explain why the matter should not be referred to Disciplinary Counsel. On October 24, 2001, the Probate Court issued an order to that effect. On June 19, 2002, the Probate Division denied respondent's request to retain the compensation and referred the matter to Disciplinary Counsel for investigation. The court also issued an order on June 20, 2002, advising Ms. Fulwood that if she did not "proceed to obtain new counsel, a new guardian m[ight] be appointed in [Fulwood's] place." Thereafter, Ms. Fulwood wrote to the court requesting that respondent be removed as counsel. The Probate Division denied Ms. Fulwood's request, explaining that respondent had been retained by Ms. Fulwood, not appointed by the court, such that it was "within the guardian's sole authority to release [respondent]."

After a period of unemployment during which she was without funds to repay the estate, respondent repaid the estate on December 8, 2003, "for all of the

unapproved fees." The net result was that respondent "did not receive any compensation in connection with her representation of Ms. Fulwood."

In 2002, the Office of Disciplinary Counsel opened an investigation into the matters referred by the Probate Division. The charges that Disciplinary Counsel eventually brought against respondent were the subject of a petition for negotiated discipline, in which respondent "admitted to three instances of negligent misappropriation of funds and additional violations in connection with her services as attorney for the guardian of the estate." *In re Harris-Lindsey*, 19 A.3d 784, 784 (D.C. 2011). The parties agreed to a one-year suspension from the practice of law with six months stayed in favor of one year of probation with conditions. *Id.* at 2. An Ad Hoc Hearing Committee conducted a limited hearing on July 7, 2009,[7] and recommended approval of the petition. Subsequently, this court referred the matter to the Board for its recommendation. On July 1, 2010, the Board issued a report recommending that the court reject the petition in favor of a contested discipline proceeding. Accepting the Board's recommendation, we denied the petition for negotiated attorney discipline and remanded the matter for "the presentation of

---

[7] *See* D.C. Bar Rule XI, § 12.1(c).

evidence in a contested proceeding," citing the "insufficiency of the record . . . to permit a satisfactory determination of respondent's culpability." *Id.* at 785.

After this court rejected the petition for negotiated discipline, Disciplinary Counsel filed a new Specification of Charges, charging respondent with violations of Rule 1.15(a) (intentional, reckless, or negligent misappropriation), D.C. Bar R. XI, Sec. 19(f) (failure to maintain complete records), and Rule 8.4(d) (conduct that seriously interfered with the administration of justice). The matter was assigned to Hearing Committee Number One. After an additional evidentiary hearing in July 2015, the Hearing Committee found respondent's testimony to be generally credible, attributing inconsistencies in her testimony to her difficulty with recollection of events that occurred between fifteen and twenty years ago, and found that Respondent had been fully cooperative with Disciplinary Counsel's investigation and had had an "exemplary" career as a government attorney since 2002. On the merits, the Committee found a Rule 19(f) record-keeping violation; found that the charge that respondent violated Rule 8.4(d) by seriously interfering with the administration of justice had not been proven by clear and convincing evidence; and found that respondent committed negligent misappropriation as to the 1995 and 1996 withdrawals to her fees and reckless misappropriation as to the

1999 withdrawal for the same purpose. The Hearing Committee recommended disbarment.

On June 28, 2017, the Board issued its majority and plurality findings and recommendations that are the subject of this opinion. The Board majority found that the Hearing Committee's credibility determination was "'well-supported by substantial evidence" and adopted it.

## II. Standard of Review

"When considering a Report and Recommendation from the Board on Professional Responsibility, we accept the findings of fact made by the Board unless they are unsupported by substantial evidence in the record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *In re Pleshaw*, 2 A.3d 169, 172 (D.C. 2010) (internal quotation marks omitted). "While we defer to the Board's findings of fact, we review the Board's determinations of disciplinary violations *de novo*." *Id.*

## III. Analysis

"[M]isappropriation" is "any unauthorized use of client's funds entrusted to the lawyer, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Abbey*, 169 A.3d 865, 872 (D.C. 2017) (brackets omitted) (quoting *Anderson*, 778 A.2d at 335). The three elements of misappropriation are (1) that client funds were entrusted to the attorney; (2) that the attorney used those funds for the attorney's own purposes; and (3) that such use was unauthorized. *In re Travers*, 764 A.2d 242, 250 (D.C. 2000). To prove misappropriation, Disciplinary Counsel bears the burden of establishing each element by clear and convincing evidence. *Anderson*, 778 A.2d at 335.

We observed in *Travers* that "whether an attorney who is a joint signatory on an estate account is 'entrusted' with the funds in that account . . . is not an easy question to answer." 764 A.2d at 250. Noting that the relevant case law was "sparse and inconclusive, especially on the question of whether the attorney must have exclusive control of client funds, as opposed to joint control with the representative of the estate" for there to be entrustment, we declined to answer the question and resolved the matter then before us on other grounds. *Id.*

In the instant case, the members of the Board reached divergent conclusions about whether the estate account funds in this case were entrusted to appellant and, if so, whether her use of the funds was unauthorized. A majority of the Board reasoned that respondent's receipt of three payments of fees and expenses from the estate accounts in 1995, 1996, and 1999, "undisputedly . . . with the client's consent," "was wrongful" because there had not been the "required advance approval by the probate court."[8] However, Disciplinary Counsel did not charge respondent with taking a wrongful fee,[9] and on the issue of whether respondent's conduct constituted misappropriation, the Board majority found that it did not. It did not, the Board majority found, because the Probate Division had not appointed respondent as a fiduciary, and because client Fulwood "retained check-writing oversight by remaining as a signatory of the [estate] account[s]," with the result

---

[8] As the basis of the prior-court-approval requirement, the Board majority cited Super. Ct. Probate R. 225(e)(1) ("[A]n attorney may petition for allowance of reasonable attorney's fees for preparing pleadings filed with the Court and for other necessary legal services rendered to the fiduciary in the administration of the estate[.]"). The Board majority acknowledged that the rule does not explicitly state that court approval is required *before* making legal fee payments. The more clear authority in this case was the Probate Division's 1998 order, of which respondent was aware, directing Ms. Fulwood not to withdraw funds without prior court authorization.

[9] *See* Rule 1.5(a) (providing that "[a] lawyer's fee shall be reasonable" and that the reasonableness of a fee is measured in part by reference to "limitations imposed . . . by the circumstances"). The petition for negotiated discipline included a Rule 1.5 illegal-fee charge, but Disciplinary Counsel did not include that charge in the Specification of Charges in this contested proceeding.

that respondent "could not issue a check without the client's consent and participation." The Board majority concluded that "[u]nder those circumstances, the payment of fees, with the client's consent and participation but without prior court approval, was not a misappropriation of entrusted funds."

With regard to the 1995 and 1996 withdrawals by cashier's checks, the Board majority found that the evidence fell "far short of clear and convincing evidence that the . . . cashier's checks were taken from funds the client had 'entrusted' to [r]espondent." Citing this court's opinion in *In re Arneja*, 790 A.2d 552 (D.C. 2002), the Board majority also concluded that respondent's use of the funds was not unauthorized because it was made with the client's consent. *See id.* at 556 ("To establish misappropriation [Disciplinary] Counsel had to prove by clear and convincing evidence that the client did not consent to the attorney's use of the funds." (internal quotation marks omitted)).[10]

---

[10] The Board majority recognized that the parties' arguments had not addressed the issue of whether entrustment and unauthorized use had been proven, but disagreed that there had been a waiver of those issues, determining that the issues involved questions of law that the parties could not waive even by stipulation. The Board cited its responsibility to ensure that its recommendations to this court "have a sound basis in law and fact." Before us, the parties have not argued that these issues are waived.

Disciplinary Counsel asserts that "[e]ntrustment, in law practice, reflects the special protections that apply when a lawyer has authority over property belonging to someone else" and that there can be entrustment even when a lawyer does not have unilateral control over funds or other property.[11]  Disciplinary Counsel urges us to adopt "the common understanding of the term ["entrustment"], i.e., that "funds are entrusted to a lawyer whose signature is required for their disbursal" (even if the account requires two signatures for disbursal), such that the lawyer "is trusted with authority to prevent their unauthorized disbursal."  That was the case here, Disciplinary Counsel argues, because "[b]ut for [respondent's] [] signature on the check," the funds in question could not have been withdrawn.  Disciplinary Counsel also argues that the elements of misappropriation were satisfied despite the client's consent to withdrawal of the funds because the client "had no interest in the funds and no right to disburse them on her own authority," such that her "acquiescence was of no moment."  Disciplinary Counsel asserts that the misappropriation in this case was negligent misappropriation because it was a result of respondent's misunderstanding about whether her fees could be treated as

---

[11] Disciplinary Counsel's brief also asserts that "[a] lawyer in possession of the funds of a client or a third person is entrusted with those funds."  However, Disciplinary Counsel retreated from that position during oral argument, conceding, for example, that a lawyer who is in possession of funds that a client or other person inadvertently left in the lawyer's office has not necessarily been entrusted with those funds.

administrative expenses that did not require court approval in advance. But Disciplinary Counsel urges this court to make clear that "[w]hen . . . funds belong to a guardianship estate, the lawyer cannot spend those funds for her legal fees without the prior agreement of the court."

The Division agrees that respondent withdrew funds without authorization because, in the context of a guardianship account (and to use the Hearing Committee's words), "approval was the court's and not the guardian's to give." As to whether the account funds were "entrusted" to respondent, the Division agrees with the Board's observation that "[t]he law on this issue [is] nearly as 'sparse and inconclusive,'" 764 A.2d at 250, as it was when this court issued its 2000 opinion in *Travers*.

There is, however, some relevant guidance, and on the basis of that guidance, the author of this opinion agrees with the Board majority that the record evidence "falls short of clear and convincing evidence that [the amounts taken from the account to pay attorney's fees to respondent] were taken from funds [that had been] 'entrusted' to [r]espondent." According to the general dictionary definition, to 'entrust' means to "give over (something) to another for care." *In re C.G.H.*, 75 A.3d 166, 172 (D.C. 2013) (quoting WEBSTER'S II NEW COLLEGE

DICTIONARY 231, 246, 384 (3d ed. 2005). Our case law does not define "entrustment" in the attorney discipline context, but we have said that "[t]he underlying purpose of . . . Rule 1.15 [] [the Rule of Professional Conduct pertaining to 'safekeeping property'] is . . . to make it possible for a client to entrust property to the safekeeping of a lawyer with confidence that the funds will be as safe as they would be if the client herself were to continue to hold them." *In re Haar*, 698 A.2d 412, 425 (D.C. 1997).

Thus, entrustment of funds has to do with giving funds over to the care of an attorney with confidence that the funds will be as safe as they would be if the client were to continue to hold them. That understanding of the term is consistent with definitions of "entrustment" that have been employed by other courts. *See, e.g.*, *United Specialty Ins. Co. v. Barry Inn Realty, Inc.*, 130 F. Supp. 3d 834, 839 (S.D.N.Y. 2015) (explaining that "the term 'entrust' . . . means that the insured 'surrender[ed] or deliver[ed] or transfer[red] . . . possession [of premises] with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient.'"); *Truck Ins. Exchange v. Bill Olinger Mercury, Inc.*, 495 P.2d 1201, 1204 (Or. 1972) ("'Entrust,' as defined by Webster's New International Dictionary 855 (2d ed. 1961), is . . . 'to commit or surrender (something) to another with a certain confidence regarding his care, use, or

disposal of it[.]'"); *State v. Moss*, 487 P.2d 1347, 1349 (N.M. Ct. App. 1971) ("The common meaning of 'entrust' is to . . . commit or surrender to another with a certain confidence regarding his care, use, or disposal." (citing Webster's Third New International Dictionary (1966)); *cf. United States v. Whitlock*, 663 F.2d 1094, 1109 n.4 (D.C. Cir. 1980) (implying that misappropriation requires "access in a situation of confidence"); *Kafantaris v. Signore (In re Signore)*, 436 B.R. 71, 77 (Bankr. N.D. Ill. 2010) (stating, somewhat circularly, that entrustment entails "someone -- a lawyer for example, or a guardian, or a managing partner -- in whom confidence is reposed [being] entrusted with another person's money for safekeeping.").

Clear and convincing evidence is "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Cater*, 887 A.2d 1, 24 (D.C. 2005) (quoting *In re Dortch*, 860 A.2d 346, 358 (D.C. 2004)). In the view of the author of this opinion, the evidence in this case cannot support a firm conviction that *anyone* entrusted the estate-account funds to respondent. The court did not appoint respondent as a fiduciary to safeguard the estate-account funds. As far as the record discloses, neither did the minor child commit the funds to respondent's care. Ms. Fulwood, respondent's cousin, presumably trusted respondent to a certain extent since she asked her to represent

her in connection with her duties as court-appointed guardian of the estate account. But, according to respondent's credited testimony, respondent told Fulwood that she "didn't know how to do [the work entailed in setting up and administering an estate account]," and there was "some hesitation . . . within the family about not doing it." Ms. Fulwood also knew that respondent was a newly-minted attorney with no experience with Probate Division matters, i.e., that this "was going to be [respondent's] first case." Respondent testified that she "took [Fulwood] with [her]" when she went to the Probate Division "because [Fulwood] was going to help me with this because I didn't really know what we were doing." In addition, Fulwood told respondent that she (Fulwood) "would handle the [estate] tax part."

Respondent further testified that her recommendation to Ms. Fulwood was that Fulwood retain a probate attorney, but Fulwood "said she would rather work with [respondent]." Disciplinary Counsel emphasizes that Ms. Fulwood was a "close relative, who relie[d] on the lawyer for advice" and "look[ed] to the lawyer for legal advice as to whether a disbursal may be properly made." But Respondent, whose testimony the Hearing Committee credited, told the Hearing Committee that she was "doing this with a family member who knew as much as I knew."

In light of the foregoing, the record supports an inference that Ms. Fulwood's engagement of respondent perhaps had more to do with saving money (Ms. Fulwood engaged her cousin as a lawyer who did not plan to charge a fee) or with identifying a lawyer with whom Fulwood had a comfortable relationship, than with any confidence regarding the safekeeping of the estate funds. Furthermore, while the record does not disclose why the two-signatures-required-for-withdrawal arrangement came to be, it permits an inference that Ms. Fulwood wanted or accepted the dual-signature requirement because it did not require her to vest confidence in respondent's unilateral handling of the funds.[12] In short, there is not clear and convincing evidence that Ms. Fulwood gave respondent authority over the estate-account funds with confidence that respondent would keep the funds as safe as they would be if Ms. Fulwood alone had access to them.

---

[12] The Hearing Committee found that "[t]he record does not show if [r]espondent was aware of or assented to" [Ms. Fulwood's] $800 withdrawal in 1997, which the Board found may have been accomplished through "a cash withdrawal from an ATM." The implication is that Ms. Fulwood may have exercised unilateral control over the estate-account funds. However, the record does not establish or suggest that respondent ever did so or had the power to do so (except possibly in connection with a March 2, 2001, request to Independence Federal Savings Bank for account statements for the estate money market account for the period covering October 1999, wherein respondent directed the bank to "Please deduct any associated charges for this request from the above referenced money market fund").

A majority of the Division, by contrast, agrees with Disciplinary Counsel on both prongs of his argument pertaining to the elements of misappropriation: (1) that a lawyer is "entrusted" with client or third party funds when she is imbued with authority to prevent their unauthorized use[13] (e.g., when her signature is required for their disbursal, even if (to quote Disciplinary Counsel) "a co-signature is required [along with the lawyer's signature] before a check can be drawn on an . . . account"); and (2) that "unauthorized use" of funds can be established by proving either that the client did not consent to the attorney's use of the funds, or, regardless of whether there is client consent, that the funds or assets were accessed without required advance approval by a court. The Division majority also concludes that Disciplinary Counsel proved by clear and convincing evidence that respondent (negligently) misappropriated funds belonging to the estate account because she failed to exercise her authority to prevent (and indeed facilitated) withdrawal of the funds when there had been no prior court approval.

Nevertheless, since this opinion announces for the first time what it means for client or third party funds to be "entrusted" to a lawyer and expands our application of the term "unauthorized use" for purposes of determining whether

---

[13] This of course would include situations where the lawyer is the court-appointed fiduciary of an estate account.

funds have been misappropriated, the Division unanimously concludes that the holding in this case, concluding that there was misappropriation on the facts presented, should be prospective only. *See In re Mance*, 980 A.2d 1196, 1205-06 (D.C. 2009) (concluding that the opinion would be given prospective effect only because the "application [of the governing Rule was] not clear on its face" and the understanding among lawyers was different from the interpretation the court announced). As the Board majority noted, its conclusion that there was no misappropriation was supported by the interpretation in a number of prior Board decisions — including ones in which Disciplinary Counsel took no exception to the Board's reasoning "that misappropriation does not occur when an attorney accepts a fee from a guardian or personal representative, issued without court approval, unless that client has also relinquished control of the account to the attorney" and its reasoning that "'unauthorized use,' in the context of misappropriation in estate cases, means without the client's consent." *See, e.g.*, *In re Fair*, 780 A.2d 1106, 1110 n.10 (D.C. 2001) ("[T]he Board's consistent position has been that no misappropriation is involved when an attorney who is not also the personal representative accepts payment of a fee without court authorization."). As the Board also noted, case law and D.C. Bar ethics opinions state that an attorney to the fiduciary of an estate does not have a fiduciary relationship with the estate.[14]

---

[14] *See Hopkins v. Akins*, 637 A.2d 424, 428 (D.C. 1993) ("Whether a
(continued…)

Applying the Division's holding prospectively is also consistent with our purpose in disciplinary cases "not to discipline attorneys for inadvertent violations based on reasonable, but mistaken interpretations of the rules, but to make lawyers' obligations clear so that the interest of the public will be protected." *Mance*, 980 A.2d at 1206; *cf. Haar*, 698 A.2d at 424 (mitigating sanction for negligent misappropriation because respondent believed "in good faith, although negligently, that he had an undisputed right" to withdraw money from the trust account to pay for his legal services).

## IV. Sanction

That brings us to what sanction is appropriate. In determining what sanction to impose, this court examines the "nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the

---

(…continued)
beneficiary of an estate may sue the attorney of the personal representative for negligence is an issue this court has not had occasion to decide. We now join the broad majority of the courts considering the question and hold, as a matter of law, that no such duty exists.").

courts, and the public." *In re Samad*, 51 A.3d 486, 499 (D.C. 2012) (quoting *In re Steele*, 868 A.2d 146, 153 (D.C. 2005)). The Board's sanction recommendation, if any, "comes to us with a strong presumption in favor of its imposition." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (internal quotation marks omitted).

Here, respondent was retained to prepare and file the accountings related to the estate account. The nature of the violation for which we impose a sanction was that she "failed to submit her complete file, asserting that a number of the relevant documents had been lost in an office move." For that record-keeping violation, the Board had no majority sanction recommendation. Disciplinary Counsel, noting that a "six-month suspension is the norm for attorneys who have negligently misappropriated client funds," *In re Herbst*, 931 A.2d 1016, 1017 (D.C. 2007), acknowledges that "[t]here are no cases in which a sanction has been imposed on a record-keeping violation unaccompanied by other violations." Disciplinary Counsel emphasizes, however, the importance of compliance with record-keeping requirements, explaining that "failure to keep records protects misappropriating lawyers." Disciplinary Counsel also acknowledges the many mitigating factors in this case: respondent acknowledged her misconduct and made no excuses for herself; she fully cooperated in Disciplinary Counsel's investigation; she has no prior discipline; she did not benefit financially from her misconduct and undertook

the representation solely to assist a relative; this was her "first, and in all likelihood, only" probate matter; she did not hide her conduct from her client or the court; her former supervisor, aware of the charged violations, strongly commended her integrity as a lawyer; and her "record-keeping deficiencies did not hamper Disciplinary Counsel's ability to investigate." Disciplinary Counsel states that respondent's record-keeping violation warrants an informal admonition. Respondent agrees.

We, too, agree that on the facts of this case, an informal admonition is the appropriate sanction. Accordingly, Disciplinary Counsel is directed to issue an informal admonition to respondent for her record-keeping violation.

Though we decline to sanction respondent for misappropriation, we reiterate what we stated above: that a lawyer is "entrusted" with client or third party funds when she is imbued with authority to prevent their unauthorized use, and that "unauthorized use" of funds can be established by proving either that the client did not consent to the attorney's use of the funds or that the funds or assets were accessed without required prior approval by a court. If a lawyer fails to exercise her authority to prevent the unauthorized use of client or third-party funds, a finding of misappropriation may lie.

It is

*So ordered.*

GLICKMAN, *Associate Judge*, with whom BECKWITH, *Associate Judge*, joins, concurring: In all respects but one, we are in agreement with our colleague, Judge Thompson, as to the disposition of this matter. We write separately to explain more fully why we disagree with Judge Thompson's conclusion that misappropriation of entrusted funds was not proved in this case.

The prohibition on misappropriation derives from Rule 1.15 of the Rules of Professional Conduct. In pertinent part, Rule 1.15(a) provides that "[a] lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property." The Rule goes on to specify how funds of clients or third persons in the lawyer's possession must be maintained in trust and safeguarded. Comment [1] to this Rule further elaborates that "[a] lawyer should hold property of others with the care

required of a professional fiduciary. . . . This rule, among other things, sets forth the longstanding prohibitions of the misappropriation of entrusted funds . . . ."[1]

Our cases commonly state that misappropriation "includes any unauthorized use of a client's entrusted funds,"[2] but the text of the Rule makes clear that a lawyer's fiduciary duties also extend to entrusted funds (or other property) of non-clients. Thus, misappropriation also includes a lawyer's unauthorized withdrawal of funds from an estate account entrusted to the lawyer without the required prior court approval, even though the funds are not client funds.[3]

The present case concerns respondent's unauthorized withdrawal of funds from a guardianship-estate account. The account held money belonging to the guardian's minor child. The guardian, Ms. Fulwood, was respondent's client;

---

[1] Although the Comment speaks of "entrusted" funds, the Rule itself does not use the word "entrusted"; it requires lawyers to safeguard any property of clients or third persons that is "in their possession in connection with a representation[.]" Because we conclude there was "entrustment" in this case, we need not consider whether the prohibition on misappropriation applies only to property "entrusted" to a lawyer.

[2] *In re Gray*, 224 A.3d 1222, 1229 (D.C. 2020); *cf. ante* at 2 ("Our disciplinary cases define misappropriation as any *unauthorized* use of client's funds *entrusted* to the lawyer[.]" (quoting *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001))).

[3] *See, e.g.*, *In re Pleshaw*, 2 A.3d 169, 173 (D.C. 2010).

respondent's role was to counsel and guide her in fulfilling her legal duties as guardian. In connection with that representation, Ms. Fulwood requested that respondent be a second signatory on the estate account. Respondent acceded to that request, and her signature was required, along with that of the guardian, to withdraw any funds from it. Respondent and Ms. Fulwood thus had joint control over the account's funds. Acting in concert, but without the required court approval, they withdrew money from the account to pay respondent's legal fees.

The Board majority concluded that this withdrawal was not a misappropriation of "entrusted" funds. The Board reasoned that there had been no "entrustment" because the Probate Court did not appoint respondent as a fiduciary to safeguard the estate-account funds, and "[t]he client retained check-writing oversight by remaining as a signatory of the account; as a result, [r]espondent could not issue a check without the client's consent and participation." On the premise that "entrustment of funds has to do with giving funds over to the care of an attorney with confidence that the funds will be as safe as they would be if the client were to continue to hold them,"[4] Judge Thompson likewise finds insufficient proof of entrustment. The evidence, she notes, "permits an inference that Ms.

---

[4] *Ante* at 18.

Fulwood wanted or accepted the dual-signature requirement because it did not require her to vest confidence in respondent's unilateral handling of the funds."[5]

We think the Board majority and Judge Thompson take too narrow a view of entrustment. Their reasoning might be more persuasive if the funds in question belonged solely to the client, though even then we might question the implicit assumption that entrustment necessarily equates to "unilateral handling" of the client's funds by the lawyer without any residual client oversight or control. But here the money in the estate account belonged to a third person—the client's minor child. Respondent's client, Ms. Fulwood, had fiduciary duties to that child with respect to the account, duties on which it was respondent's role as counsel to advise her. By engaging respondent to serve, in connection with that assignment, as a second, required signatory on the account, Ms. Fulwood ceded some of her power over the account as guardian and vested shared control over it in respondent. She empowered respondent to exercise independent responsibility for the proper disposition and safeguarding of the money in the account. Respondent's acceptance of that role authorized and obligated her, in the words of the comment to Rule 1.15, to "exercise the care required of a . . . fiduciary" over the funds under

---

[5] *Ante* at 21.

her partial control to prevent unauthorized withdrawals. If the basic definition of "entrust" is to "give over (something) to another for care,"[6] it is accurate to say that Ms. Fulwood "entrusted" respondent with the care of the funds in the estate account. This is especially true when, as here, Ms. Fulwood herself sought to disburse them.

Thus, in principle, we conclude there is "entrustment" for purposes of Rule 1.15 when a lawyer has only joint rather than exclusive control over funds belonging to someone else, if (in connection with a representation) the lawyer is vested with sufficient authority to prevent improper disbursal of the funds. Where the funds belong to a non-client, this is the case even if it is the lawyer's client who shares control over them and agrees to the disbursal. Accordingly, to answer the specific question posed in this case and left open in *In re Travers*,[7] the court now holds that a lawyer is "entrusted" with funds in an estate account when, in connection with a representation, the lawyer's signature is required for disbursal of the funds—even if the lawyer's client is a cosignatory who approves the disbursal. This means the elements of misappropriation were satisfied in this case when

---

[6] *Ante* at 17.

[7] 764 A.2d 242, 250 (D.C. 2000); *see ante* at 13.

respondent allowed funds to be withdrawn from a guardian-estate account to pay her legal fees without the required prior approval of the court.